115 T.C. No. 37


UNITED STATES TAX COURT


THE NIS FAMILY TRUST, FRANK NI, TRUSTEE, ET AL.,[1] Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 9820-99, 9821-99,            Filed December 4, 2000.
         9822-99.


        The cases are before the Court on R's motions for
judgment on the pleadings and partial summary judgment
and on the Court's orders to show cause why it should
not (1) impose penalties on Ps for instituting or
maintaining proceedings primarily for delay or for
advancing frivolous or groundless positions, and
(2) require Ps' attorney, S, to pay excess costs,
expenses, and fees for her bad faith course of conduct
by which she unreasonably and vexatiously multiplied
these proceedings.
        In the petitions, Ps fail to address any of the
adjustments made in the notices of deficiency, raising

_____

        [1] Cases of the following petitioners are consolidated
herewith:  Nis Venture Trust, Frank [Hae-Rong] Ni, Trustee,
docket No. 9821-99, and Hae-Rong and Lucy B. Ni, docket No. 9822-
99.

only meritless tax-protester arguments. Ps, therefore, have conceded those adjustments and, with respect to the deficiencies in tax determined by R, entry of judgment on the pleadings is appropriate. Sec. 7491, I.R.C., does not add to the burden of respondent as the movant for judgment on the pleadings in these cases. R has shown that partial summary judgment is appropriate for the accuracy-related penalties determined by R. Ps have abandoned their return positions, relying, instead, on a strategy of noncooperation and delay, undertaken behind a smokescreen of frivolous tax-protester arguments. S, Ps' attorney, has, in bad faith, aided Ps in that strategy by making additional meritless tax-protester arguments, making meritless motions and responses to motions, and abusing the Court's subpoena power. Neither Ps or S have shown that the orders to show cause should not be made absolute.

1. Held: With respect to the deficiencies in tax determined by respondent, judgment will be entered on the pleadings. Rule 120(a), Tax Court Rules of Practice and Procedure.

2. Held, further, sec. 7491, I.R.C., does not add to movant's burden for judgment on the pleadings with respect to such deficiencies in tax.

3. Held, further, with respect to the sec. 6662, I.R.C., accuracy-related penalties, partial summary judgment will be granted for R. Rule 121(a), Tax Court Rules of Practice and Procedure.

4. Held, further, in each case, P (or Ps) will be required to pay penalties ($25,000 in docket No. 9822-99; $500 in docket No. 9820-99 and $5,000 in docket No. 9821-99) on account of instituting and maintaining these proceedings primarily for delay and taking frivolous and groundless positions. Sec. 6673(a)(1), I.R.C.

5. Held, further, S will be required to pay personally $10,643.75 for R's excess attorney's fees reasonably incurred by R on account of S's bad faith course of conduct in which she unreasonably and vexatiously multiplied the proceedings. Sec. 6673(a)(2), I.R.C.

Crystal D. Sluyter, for petitioners.

Dale A. Zusi, Paul K. Webb, and Debra K. Moe, for respondent.


OPINION

HALPERN, Judge:  These cases have been consolidated for trial, briefing, and opinion (the consolidated cases or these cases).  Respondent has determined deficiencies in income tax and accuracy-related penalties under section 6662 as follows:

| Petitioner[s] | Taxable Year | Deficiency | Penalty |
|---|---|---|---|
| The Nis Family Trust, Frank Ni, Trustee | 1995 | $83 | $17 |
| Nis Venture Trust, Frank Ni, Trustee | 1995 | 172,702 | 34,540 |
| Hae-Rong and Lucy B. Ni | 1995 | 186,988 | 37,398 |

These cases are before the Court on (1) respondent's motions for (A) judgment on the pleadings and (B) partial summary judgment and (2) the Court's orders to show cause why it should not impose (A) penalties on petitioners pursuant to section 6673(a)(1) and (B) require counsel for petitioners, Crystal D. Sluyter, to pay costs, expenses, and fees (without distinction, costs) pursuant to section 6673(a)(2).

Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the year in issue, and

all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

### Residence

At the time the petitions were filed, all petitioners resided in San Jose, California.

### Notices of Deficiency

By separate notices of deficiency, each dated February 19, 1999 (collectively, the notices of deficiency or notices), respondent determined the deficiencies in tax and penalties set forth above.[2]  Respondent's determinations were based on the following adjustments:

#### Nis Family Trust

Respondent disallowed petitioner's deduction for fiduciary and attorney's fees in the amount of $600 because of petitioner's failure to establish the amount, if any, of such fees paid during the taxable year for ordinary and necessary expenses incurred in connection with trust administration or the management of trust assets.  Respondent disallowed petitioner's deduction for a charitable contribution in the amount of $1,800 because of

---

[2]  Copies of those notices of deficiency are attached as Exhibits A through C to respondent's requests for admissions.  As set forth below, petitioners failed timely to deny respondent's requests for admissions, and, therefore, such requests are deemed admitted.  See Rule 90. Petitioners are also deemed to admit that petitioner Hae-Rong Ni is also known as Frank Ni.

petitioner's failure to substantiate (1) the existence and amount of any contribution, (2) that a contribution was made to a charitable organization, and (3) that the claimed contribution was not a prohibited transaction resulting in personal benefit or inurement. Respondent disallowed petitioner's claimed exemption deduction in the amount of $100 because of petitioner's failure to show entitlement to such deduction under either section 651 or 652.

Nis Venture Trust

Respondent disallowed petitioner's cost of goods sold in the amount of $404,420 and a deduction for Schedule C, Profit or Loss From Business, expenses in the amount of $9,737 because of petitioner's failure to substantiate such expenditures and to show that such expenses were incurred in a trade or business. Respondent disallowed an S corporation loss in the amount of $20,131 because of petitioner's failure to substantiate such loss and show that the loss was a business loss. On various grounds, respondent disallowed an income distribution deduction in the amount of $1,500, a deduction for attorney's fees of $1,500, a deduction for an exemption of $100, and a Schedule E, Supplemental Income and Loss, expense for rent in the amount of $1,021.

Hae-Rong and Lucy B. Ni

Respondent increased petitioners' gross income by $439,230 based on the alternative grounds that (1) the Nis Family Trust and the Nis Venture Trust (together, the Trusts) are shams with no economic substance, (2) the Trusts are grantor trusts, (3) under the assignment of income doctrine, petitioners are taxable on the income and deductions of the Trusts, or (4) if the Trusts are recognized for tax purposes, sections 652 or 662 function to increase the gross income of petitioners. Respondent also made certain resultant adjustments and other adjustments that are not fully explained.

Pleadings

A separate petition in each of the consolidated cases was filed on May 21, 1999. None of the petitions fully complied with our Rules, and, in each case, petitioner (petitioners in the case of Hae-Rong and Lucy B. Ni) was ordered by the Court to file an amended petition. In each case, petitioner (or petitioners) filed an amended petition (together, the amended petitions) stating the following disagreement, and reasons therefor, with the adjustments set forth above (and accompanying penalty):

> I disagree with all the adjustments and changes the
> Commissioner has made. I do not believe that there was
> any underlying liability due to a lack of
> consideration. I have previously submitted facts with
> the Internal Revenue Service "IRS" in support of my
> position in an effort to resolve the matter
> administratively. The IRS failed or refused to
> consider those facts or my good faith effort to resolve

the matter.  The following facts were submitted to the IRS in April of 1999:

1.  "It does not appear that the United States and the State of California (each a body politic with their respective governments) are under any legal obligation to protect our property and ourselves;

2.  That although I may have accepted some commercial  benefits, it does not appear that the tax in question bears a fiscal relation to those benefits;

3.  In addition, regardless of the fact that some commercial benefits may have been accepted, it does not appear that any <u>obligation</u> to pay any particular tax in return was ever disclosed."

Factually, this case is distinguished from cases such as <u>United States v. Sloan</u>, 939 F.2d 499 and similar cases because the presumption of <u>Cook v. Tait</u>, 265 U.S. 47 has been overcome due in part to statutes such as 50 U.S.C. § 1520 as enacted in 1976.

The IRS has not disputed these facts.  Therefore, petitioner brings only an issue of law before the court.

The legal conclusion drawn from the above facts is that no liability could have been incurred regardless if income was earned or not because of a lack of consideration, see also <u>State of Wisconsin, et al. v. J.C. Penney Company</u>, 311 U.S. 435, and <u>Complete Auto Transit, Inc. v. Brady</u>, 430 U.S. 274.

Respondent filed answers to the amended petitions on September 24, 1999.  In each answer, respondent denied making errors in his adjustments.

Consolidation

By motion filed November 23, 1999, respondent moved to consolidate these cases for trial, briefing, and opinion (the motion to consolidate).  We ordered petitioners to make any

objection to the motion to consolidate by December 13, 1999. No objection was made, and we granted the motion to consolidate on December 21, 1999.

Cases Set for Trial

By notice dated December 29, 1999, these cases were set for trial at the trial session of the Court commencing on June 5, 2000, in San Francisco, California (the trial session).

Admissions

On March 16, 2000, respondent served Respondent's Requests for Admissions (the requests for admissions) on all petitioners herein. See Rule 90. None of the petitioners responded to the requests for admissions. Therefore, each matter as to which respondent requested admission is deemed admitted (the deemed admissions). See Rule 90(c). We will set forth some of the deemed admissions in the discussion that follows.

Appearance of Crystal D. Sluyter

On April 10, 2000, Crystal D. Sluyter, attorney, entered her appearance in each of these cases, on behalf of the respective petitioner (or petitioners).

Motions for Protective Order

On April 10, 2000, petitioners, "by and through" Ms. Sluyter, separately moved in each case for a protective order "in regards to discovery and production of documents" (motions for protective order or the motions). The motions all state:

"This motion should be granted because the respondent is not entitled to receive any private and confidential books and records from petitioners."  No affidavits accompany the motions. The motions are accompanied, however, by documents entitled "Memorandum of Points and Authorities" (the memoranda).  The memoranda state as follows:  "The gravamen of Petitioners' case is that respondent has no legitimate authority over their lives and property."  The memoranda continue:

> The petitioners entered evidence that the Internal Revenue Code (IRC) was not applicable to them.  * * *
>
> *     *     *     *     *     *     *
>
> As the Petitioners maintain that Respondent lacks legitimate authority over their lives and property, it would be imprudent to allow Respondent to have Petitioners' books and records before evidence is provided to the contrary.

The motions are all signed by Ms. Sluyter.

On April 11, 2000, the Court ordered respondent to respond to the motions.  On April 24, 2000, respondent filed an 11-page response.

On April 25, 2000, the Court denied the motions.

Motions for Judgment on the Pleadings

On April 12, 2000, respondent, by a separate motion in each case, moved for judgment on the pleadings (the motions for judgment on the pleadings or the motions).  On April 13, 2000, the Court ordered petitioners to respond to the motions for judgment on the pleadings.  On April 19, 2000, in response to the

motions, all of the petitioners filed similar documents, captioned "Petitioners' Objections to Respondent's Motion for Judgment on the Pleadings and Supporting Memorandum" (sometimes, petitioners' objections).  The memorandum portion of each of petitioners' objections states that, although, in the petition, petitioner (petitioners, in the case of Hae-Rong and Lucy B. Ni) did state that there were no issues of fact in dispute, such is no longer the case.  Each such memorandum portion claims:

> There is no evidence to suggest that there is a <u>bona fide</u> political relationship between the petitioners and the "UNITED STATES" and the "STATE OF CALIFORNIA." There is no evidence that the petitioners are subject to the written will of individuals called "CONGRESSMEN."  * * *

Each of petitioners' objections includes an affidavit of Ms. Sluyter wherein, among other things, she claims, without further detail:  "There is a factual dispute as to the Petitioners relationship to the United States and the State of California."  Ms. Sluyter signed the petitioners' responses.

<u>Court's Order Dated April 24, 2000</u>

By order dated April 24, 2000 (the April 24 order), the Court (1) calendared the motions for judgment on the pleadings for hearing at the trial session and (2) ordered that, at the trial session (A) petitioners show cause why the Court should not impose a penalty pursuant to section 6673(a)(1) (which provides for a penalty if, among other things, a proceeding is instituted or maintained primarily for delay or the taxpayer's position is

frivolous or groundless), and (B) Ms. Sluyter show cause why she should not be required to pay costs pursuant to section 6673(a)(2) (which provides that costs may be imposed on counsel who has multiplied the proceedings in any case unreasonably and vexatiously).

Motions to Compel

On April 24, 2000, by one consolidated motion, made in each of these cases, respondent moved to compel (1) production of documents and (2) answers to interrogatories (the motions to compel). In support of the motions to compel, respondent set forth a history of unfulfilled requests for both informal and formal discovery. In support of the motion to compel answers to interrogatories, respondent set forth the following description of an April 4, 2000, meeting among respondent's counsel, Ms. Sluyter, and an individual named Mark MacDonald:

> On April 4, 2000, respondent's counsel met with attorney Sluyter and Mark MacDonald, a representative of petitioners, regarding respondent's informal and formal discovery requests and about the legal theories presented in these consolidated cases. Attorney Sluyter and Mr. MacDonald set forth a variety of arguments on petitioners' behalf, including: (1) that what the United States government calls the "federal law" is not applicable to petitioners Frank [Hae-Rong] and Lucy Ni, (2) that Frank [Hae-Rong] and Lucy Ni have no affiliation to the "so-called United States," (3) that the Internal Revenue Service has no jurisdiction to audit the income tax returns of Frank [Hae-Rong] and Lucy Ni, and (4) that Frank [Hae-Rong] and Lucy Ni can have no tax liability because no consideration exists between the Ni's and the United States government. Further, Attorney Sluyter stated that petitioners would not be providing respondent's

counsel with responses to the aforementioned interrogatories and would not be providing respondent's counsel with any of the requested documents. Finally, attorney Sluyter stated that she would be filing a protective order with this Court regarding respondent's counsel's discovery requests.

Respondent asked that petitioners be ordered to produce documents pursuant to 100 separately numbered requests in Respondent's First Request for Production of Documents (the document request) and answer 59 separately numbered interrogatories propounded in Respondent's First Set of Interrogatories (the interrogatories). Respondent asked for sanctions if petitioners failed to comply with any such order.

By order dated April 25, 2000 (the April 25 order), the Court ordered petitioners, on or before May 8, 2000, to produce the documents asked for in the document request and answer the interrogatories. The Court set the sanctions portion of the motions to compel for hearing at the trial session.

On May 26, 2000, the Court filed as a status report Respondent's Supplements to Respondent's Motions To Compel Production of Documents and To Compel Responses to Interrogatories (the status report). Attached to the status report are copies of petitioners' responses to the document request and interrogatories (petitioners' responses). In response to the document request, petitioners provided two documents: "Declaration of Trust of the NIS Venture Trust" and a purported trust indenture relating to "The Nis Family Trust". In

response to 83 of 100 requests for documents, petitioners responded: "There are no documents responsive to this request." Such requests included respondent's requests for documents supporting the various deductions claimed by petitioners in their returns. In response to an interrogatory asking petitioners to state their legal theory, a portion of petitioners' response is as follows:

> Petitioners will prevail because none of the witnesses are able to prove that the petitioners are subject to the will of any individuals, including individuals referred to as "CONGRESSMEN." As such, any demands or claims to petitioners' property are void. The tax system is voluntary not mandatory and the IRS Commissioner has not [sic] oath of office to the United States.
>
> In addition, petitioners can show that the individuals of the IRS have no legitimate authority over the lives and property of the petitioners. The only "authority" these individuals have is enforcing their arbitrary will at gun-point. * * *

Ms. Sluyter signed petitioners' responses.

Motions To Quash

On May 25, 2000, by five consolidated motions, made in each of these cases (motions to quash), respondent moved to quash subpoenas (the subpoenas) served on Charles Rossotti, Peggy Rule, Kevin Johnson, Andrew Bricker, and James Ledbetter. The subpoenas are signed by Ms. Sluyter, and seek to compel attendance of the individuals subpoenaed to testify at the trial session on behalf of petitioners. Mr. Rossotti is the Commissioner of Internal Revenue; Ms. Rule is the Internal

Revenue Service (IRS) District Director, Central California District; Mr. Johnson is a Revenue Agent of the IRS; Mr. Bricker is a Special Agent in the Criminal Investigation Branch of the IRS; and Mr. Ledbetter is an Appeals Officer of the IRS. Respondent made various arguments as to why the subpoenas ought to be quashed. Principally, respondent argued that none of the individuals can give testimony that is required or relevant for the Court to redetermine the deficiencies determined in these cases.

By order dated May 26, 2000, the Court ordered petitioners, on or before June 1, 2000, to file a response to the motions to quash, suspended compliance with the subpoenas, and set the motions to quash subpoenas for hearing at the trial session.

On June 5, 2000, petitioners lodged with the Court "Petitioners' Response to Respondent's Motion to Quash Subpoenas with Supporting Memorandum of Points and Authorities" (the response to the motion to quash or the response). Because the response was late, the Court gave petitioners leave to file it. In pertinent part, the response contains the following argument:

> The issue before the COURT is whether or not the individuals of the so-called INTERNAL REVENUE SERVICE (IRS) and the UNITED STATES GOVERNMENT have legitimate authority over the lives and property of the petitioners. * * *
>
> Each witness has initiated force against the petitioners. They have each * * * made the wild claim that the individuals of the so-called UNITED STATES GOVERNMENT[2] have not only a right to control

petitioners' life and property, but also a right to a portion of that property.

Petitioners have the right to collaterally attack <u>all</u> so-called "evidence" against them.  * * * that includes all so-called "facts" frivolous legal conclusions; conclusions such as the absurd claim that petitioners are subject to so-called "FEDERAL LAW" with no further requirements.

[2] There is no "entity" commonly called "GOVERNMENT." What is referred to as "GOVERNMENT" is nothing more than individuals.  These individuals use various "titles" appended to their names as if that gives them legitimate authority over the lives and property of other people.

In the response, petitioners also claim, with respect to respondent's counsel, Paul Webb, that he is a liar.  They state:

In his [Webb's] last pleading <u>he outright lied</u>[1] about the Zimmerman case in Fresno.[3]  * * *

[3]  Apparently, petitioners are referring to respondent's response to petitioners' motions for protective order, in which respondent states, among other things:

Petitioners' counsel has already argued these same frivolous legal positions before the United States District Court in an unrelated summons enforcement case.  The District Court, in an unpublished opinion, summarily rejected these arguments.  See <u>Zimmerman, et al. v. United States</u>, 85 AFTR 2d 2000-1091; 2000-1 USTC par. 50,295 (E.D. Cal. 2000) (Zimmermans argued that they are not subject to federal taxation because "they are neither citizens or residents" of the United States, they have no political relationship to the United States and owe no allegiance to the United States and the United States is under no duty to protect the Zimmermans; the responsibility to pay tax is based on a reciprocal agreement for the United States to protect the Zimmermans).

We see no inaccuracy in respondent's statements about the <u>Zimmerman</u> case, which we further discuss <u>infra</u> in sec. III.B.3.

[1] WEBB should be sanctioned for his outrageous lie.

The response is signed by Ms. Sluyter.

Motions for Reconsideration

On June 5, 2000, by one consolidated motion, made in each of these cases, petitioners moved for reconsideration of (1) our denial of the motions for protective order and (2) the April 25 order (motions for reconsideration). Among the arguments advanced by petitioners in the motions for reconsideration is that the existence of the Internal Revenue Code is not evidence that the Code is binding on petitioners. Petitioners explain that respondent's counsel:

> still refuses to provide any evidence that the petitioners are subject to the so-called "CONGRESS." That is all so-called "FEDERAL LAW" is. It's the written will of individuals referred to as "CONGRESSMEN." It demands no reverence, no allegiance and no compliance. * * *
>
> Until there is evidence that Petitioners are subject to the will of these individuals, then what the so-called "IRC" says is wholly irrelevant because there is no evidence that it is binding <u>first</u>. What is frivolous[2] is maintaining that the petitioners are subject to so-called "FEDERAL LAW" while refusing to produce evidence that Petitioners are subject to the written will of individuals referred to as "CONGRESSMEN."
>
> The filing of a so-called "RETURN" is no evidence that Petitioners are subject to the will of individuals referred to as "CONGRESSMEN." * * *
>
>     *    *    *    *    *    *    *
>
> Just because the petitioners filed so-called "RETURNS" out of fear is no evidence that a legitimate obligation to do so exists. * * *

_____

[2] One must also [take] into consideration that most of those individuals referred to as "CONGRESSMEN," that [sic] if they can be identified at all by the respondent, are more then likely DEAD or not referred to as "CONGRESSMEN" and [sic] longer.  Are petitioners subject to the written will of individuals who are dead?

Ms. Sluyter signed the motions for reconsideration.  We denied them.

Trial Session

These cases came on for hearing (the hearing), pursuant to notice, at the trial session.  At the hearing, respondent moved to amend the motions for judgment on the pleadings to limit them to the deficiencies in each case (and exclude the penalties).  Counsel for petitioners stated that she had no objection to those motions, and the Court granted them.  The Court took the motions for judgment on the pleadings, as amended (still, motions for judgment on the pleadings), under advisement.  Respondent also informed the Court that he would be making a motion for partial summary judgment with respect to the penalties determined by him in each case.  The Court gave respondent leave until July 5, 2000, to make such motion and allowed petitioners until August 4, 2000, to respond.

The Court did not conduct proceedings on those portions of the April 24 order ordering (1) petitioners to show cause why they should not be subject to a penalty under section 6673(a)(1) and (2) Ms. Sluyter to show cause why she should not be required

to pay costs pursuant to section 6673(a)(2). Rather, the Court ordered that compliance with such orders (the orders to show cause) be extended to August 25, 2000, at which time, petitioners and Ms. Sluyter were to show cause, in writing, why the orders to show cause should not be made absolute.

The Court denied the motions to quash on the grounds that no trial was held and the subpoenas were no longer in force. The Court denied the sanctions portion of the motions to compel.

The Court continued the consolidated cases and retained jurisdiction.

Subsequent Actions by Parties

On June 7, 2000, respondent, by separate motion in each case, moved for partial summary judgment as to the section 6662(a) penalty (the motions for partial summary judgment or motions). No petitioner responded to any of the motions for partial summary judgment.

Neither petitioners nor Ms. Sluyter has filed any response to the orders to show cause.

Respondent has filed various memoranda of points and authorities in support of the motions for judgment on the pleadings and partial summary judgment and the orders to show cause, as well as the affidavit of Paul K. Webb, one of respondent's attorneys, in connection with the order to show cause as to Ms. Sluyter.

Petitioners have attempted to file a document styled "Emergency Motions for Continuance and Request for Sanctions", accompanied by Ms. Sluyter's declaration in support of that document. We returned those documents to Ms. Sluyter accompanied by a letter dated August 9, 2000, explaining, among other things, that, since the cases are neither calendared for trial nor set for hearing, no continuance could be granted. By that letter, we advised Ms. Sluyter how to ask for more time to respond to the Court's orders. By letter dated August 31, 2000, we returned to Ms. Sluyter a document styled "Emergency Motion for Extension", since such document lacked Ms. Sluyter's original signature and, thus, was not a proper document. See Rule 23(a)(3). We again advised Ms. Sluyter how to ask for more time to respond.

## Discussion

### I.  Motions for Judgment on the Pleadings

#### A.  Introduction

##### 1.  Rule 120(a)

In pertinent part, Rule 120(a) provides:  "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  The pleadings in these cases consist of the petitions, amended petitions, and answers, since no other pleadings were required or permitted.  See Rule 30.  The answers were all made before

April 12, 2000, which is the date on which respondent made the motions for judgment on the pleadings. The motions for judgment on the pleadings were made sufficiently in advance of the date of the trial session, June 5, 2000, so as not to delay trial of these cases. The procedural requirements of Rule 120(a) were, thus, satisfied. As amended, the motions ask that the Court find that there is due from the various petitioners the deficiencies in tax set forth above. Petitioners object.

2. Rule 34(b)

Rule 34 deals with petitions. In pertinent part, Rule 34, provides:

> (b) Content of Petition in Deficiency or Liability Actions: The petition in a deficiency or liability action shall contain * * *
>
> * * * * * * *
>
> (4) Clear and concise assignments of each and every error which the petitioner alleges to have been committed by the Commissioner in the determination of the deficiency or liability. The assignments of error shall include issues in respect of which the burden of proof is on the Commissioner. Any issue not raised in the assignments of error shall be deemed to be conceded. Each assignment of error shall be separately lettered.
>
> (5) Clear and concise lettered statements of the facts on which petitioner bases the assignments of error, except with respect to those assignments of error as to which the burden of proof is on the Commissioner.

### 3. Respondent's Arguments

Respondent's argument is the same in each of the motions.

In docket No. 9820-99, respondent states:

> Petitioner's amended petition fails to meet these
> requirements [Rule 34(b)] and in fact states that
> "petitioner brings only an issue of law before the
> court." * * * Tax Court Rule 34(b)(4) states that
> "Any issue not raised in the assignments of error shall
> be deemed to be conceded."

Respondent then summarizes the amended petition and states that petitioner has failed to comply with Rule 34(b) by, in effect, failing to assign any error to respondent's determinations of deficiencies. For that reason, respondent argues, the motion should be granted:

> [The amended petition] * * * merely sets forth
> frivolous legal positions which are contrary to
> established law and unsupported by a reasoned,
> colorable argument for change in the law. Petitioner's
> amended petition fails to present any specific
> allegations of error, any meritorious reasons for
> disagreeing with the notice of deficiency, nor any
> facts in support of any such disagreement. * * *
>
> *     *     *     *     *     *     *
>
> Because petitioner's amended petition merely sets forth
> frivolous arguments and as such does not allege any
> justiciable error with respect to the notice of
> deficiency, respondent should be granted judgment in
> his favor based upon the pleadings. [Citations
> omitted.]

### 4. Burden of Proof

A judgment on the pleadings is a judgment based solely on the allegations and information contained in the pleadings and not on any outside matters. See Rule 120(a) and (b); see also

Fed. R. Civ. P. 12(c); Black's Law Dictionary 848 (7th ed. 1999). The movant has the burden of showing entitlement to judgment on the pleadings. See <u>Abrams v. Commissioner</u>, 82 T.C. 403, 408 (1984). He must show that the pleadings do not raise a genuine issue of material fact and that he is entitled to a judgment as a matter of law. See <u>id.</u>; see also 2 Moore, Moore's Federal Practice, sec. 12.38, at 12-102.1 (3d ed. 2000) ("Judgment on the pleadings should be granted if the movant 'is entitled to judgment as a matter of law'", quoting <u>Burns Intl. Sec. Servs. v. International Union United Plant Guard Workers, Local 537</u>, 47 F.3d 14, 16 (2d Cir. 1995)). At the hearing, we asked respondent to address whether the provisions of recently enacted section 7491 add to his burden as movant in these cases. Respondent believes that they do not. We agree.

Section 7491 was enacted by section 3001(a) of the Internal Revenue Service Restructuring & Reform Act of 1998 (RRA 1998), Pub. L. 105-206, 112 Stat. 685, 726-727. As so added, section 7491 is effective with respect to court proceedings arising in connection with examinations by respondent commencing after July 22, 1998, the date of the enactment of RRA 1998. See RRA 1998 sec. 3001(c). Respondent concedes that section 7491 is effective with respect to these Court proceedings. Provisions of section

7491 pertinent to this case are set forth in the margin.[4]  Among other things, section 7491 provides that, in any court proceeding, the burden of proof as to any factual issue is on the Secretary where the taxpayer, who has satisfied certain other

---

[4]  SEC. 7491.  BURDEN OF PROOF

(a) <u>Burden Shifts Where Taxpayer Produces Credible Evidence.</u>--

(1) <u>General rule.</u>  If, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue.

(2) <u>Limitations.</u>  Paragraph (1) shall apply with respect to an issue only if--

>    (A) the taxpayer has complied with the requirements under this title to substantiate any item;
>
>    (B) the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews; and
>
>    (C) in the case of a partnership, corporation, or trust, the taxpayer is described in section 7430(c)(4)(A)(ii).
>
>    *    *    *    *    *    *    *

(c) <u>Penalties.</u>

>    Notwithstanding any other provision of this title, the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional amount imposed by this title.

requirements, produces credible evidence with respect to that issue.  See sec. 7491(a).

Section 7491 does not add to respondent's burden as the movant for judgment on the pleadings in these cases because, in part, the burden on the movant is to show that there are no material facts in dispute.  See, e.g., <u>Abrams v. Commissioner</u>, <u>supra</u>; see also <u>Enron Oil Trading & Transp. v. Walbrook Ins. Co.</u>, 132 F.3d 526, 529 (9th Cir. 1997) (with respect to Fed. R. Civ. P. 12(c), which is similar to our Rule 120(a), judgment on pleadings for defendants reversed when they failed clearly to establish that, on the face of pleadings, no material issues of fact remained to be resolved and they were entitled to judgment as a matter of law).  Once the movant shows that there are no material facts in dispute, as he has here, see <u>infra</u> section I.B., then there remain only legal issues for the Court to decide.  Since there remain only legal issues, burden of proof, and, therefore, section 7491, are irrelevant.

B.  <u>Discussion</u>

Respondent has determined deficiencies in tax against each of the petitioners, and the petitioners have filed petitions.  We have jurisdiction to redetermine the correct amount of such deficiencies.  See sec. 6214(a).  As set forth <u>supra</u> in section I.A.2., the petition in a deficiency case must set forth each and every error that the petitioner alleges to have been committed by

the Commissioner and clear and concise statements of facts upon which the petitioner bases the assignments of error. Furthermore, any issue not raised in the assignments of error is deemed conceded.  See id.  A petition that makes only frivolous and groundless arguments makes no justiciable claim, and it is properly subject to a motion for judgment on the pleadings.  See Abrams v. Commissioner, 82 T.C. 403 (1984); see also Rodriquez v. Commissioner, T.C. Memo. 1995-67 (judgment on the pleadings granted where petitions merely set forth frivolous "protester arguments that have been heard by this Court on many occasions and rejected"); Wright v. Commissioner, T.C. Memo. 1990-232 (frivolous argument in petition that petitioner was exempt from Federal taxation justified granting respondent's motion to dismiss for failure to state a claim); Brayton v. Commissioner, T.C. Memo. 1989-664 (taxpayer made meritless "tax-protester" arguments; quoting Abrams, the Court stated:  "A judgment on the pleadings is appropriate where a petition raises no justiciable issues.").  We may grant a motion for judgment on the pleadings as to less than all the issues in a case.  See Brock v. Commissioner, 92 T.C. 1127, 1133 (1989);  Caplette v. Commissioner, T.C. Memo. 1993-46 (partial judgment on the pleadings, except as to fraud penalty, where petition merely contained "tax protester arguments that have been heard and rejected by this Court on many occasions").

The amended petitions all contain the same arguments: (1) The petitioners have no tax liability "due to a lack of consideration", (2) "[i]t does not appear that the United States and the State of California (each a body politic with their respective governments) are under any legal obligation to protect our property and ourselves", (3) although petitioners may have accepted some commercial benefits, "it does not appear that the tax in question bears a fiscal relation to those benefits", and (4) "regardless of the fact that some commercial benefits may have been accepted, it does not appear that any obligation to pay any particular tax in return was ever disclosed".

Those are all frivolous arguments. On numerous occasions, courts have rejected similar arguments. See, e.g., McLaughlin v. Commissioner, 832 F.2d 986, 987 (7th Cir. 1987) ("The notion that the federal income tax is contractual or otherwise consensual in nature is not only utterly without foundation but * * * has been repeatedly rejected by the courts."); United States v. Drefke, 707 F.2d 978, 981 (8th Cir. 1983) (taxpayer unsuccessfully argued that taxes are debts only incurred when individuals contract with the Government for services). The cases cited in the amended petitions are not relevant to the adjustments made in the notices of deficiency. None of those cases relates to the validity of the trusts involved or to the substantiation of expenses, which are the issues set forth in the notices. Furthermore, the

statute cited in the amended petitions, 50 U.S.C. section 1520 (1982), has long since been repealed. When it was effective, the statute related to the testing of chemical and biological agents on humans. Clearly such a statute is not relevant to our redetermination of any deficiency in petitioners' Federal income taxes.

In the amended petitions, petitioners state that "[petitioners bring] only an issue of law before the court." In petitioners' responses (to the motions for judgment on the pleadings), petitioners claim that that no longer is the case. Nevertheless, petitioners have not moved to amend the amended petitions to aver any facts in support of their assignments of error. See Rules 34(b), 41(a). Indeed, in petitioners' responses to the motions, petitioners' claim: "[t]here is no evidence" (1) "to suggest that there is a bona fide political relationship between the petitioners and the 'UNITED STATES' and the 'STATE OF CALIFORNIA'" and (2) "that the petitioners are subject to the written will of individuals called 'CONGRESSMEN'". Those claims do not raise any factual issue relevant to our redetermination of the deficiencies determined by respondent. Those are frivolous claims of no merit. Petitioners have raised no factual issues for decision by us.

None of the petitions or amended petitions assign any error that we consider justiciable: Petitioners rely on meritless tax-

protester arguments that demand no respect from the courts. Petitioners have failed to make any legitimate challenge to the deficiencies determined by respondent. They have not assigned any error that could possibly influence us to redetermine the deficiencies determined by respondent.

C. Conclusion

In the petitions, petitioners have failed to address any of the adjustments made in the notices of deficiency. We, therefore, consider petitioners to have conceded those adjustments. See Rule 34(b)(4). They have made no other argument of which we take cognizance. We shall grant the motions for judgment on the pleadings.[5]

II. Motions For Partial Summary Judgment

A. Introduction

1. Background

The motions for partial summary judgment ask for partial summary adjudications as to the section 6662(a) penalties. Those motions were made following respondent's amendments to the

_____

[5] Under various of the theories underlying respondent's adjustments with respect to petitioners Hae-Rong and Lucy B. Ni (e.g., the income of the Trusts is taxed to Hae-Rong and Lucy B. Ni because the Trusts are shams with no economic substance), the Trusts would owe no income tax and there could be no deficiency in tax. Respondent has, nevertheless, with respect to the Trusts, determined deficiencies in tax. We recognize that respondent may issue inconsistent notices in order to protect his interests. We will delay entering decisions in these cases until the parties have had the opportunity to advise us how we should deal with any inconsistencies.

motions for judgment on the pleadings to remove the penalties from the scope of those motions and, thus, to limit them to the deficiencies in each case.  Respondent explained his action in amending the motions for judgment on the pleadings as resulting from his concern that the pleadings alone did not satisfy the burden of production that section 7491 imposes on him with respect to petitioners' liabilities for the section 6662 penalties.[6]  See sec. 7491(c).  Apparently, respondent was concerned that, because of section 7491(c), we would refuse to enter judgment on the pleadings with respect to the section 6662 penalties.

2.  <u>Section 6662 Accuracy-Related Penalties</u>

Section 6662(a) provides for an accuracy-related penalty in the amount of 20 percent of the portion of any underpayment of tax attributable to, among other things (1) negligence or disregard of rules or regulations (hereafter, simply, negligence) or (2) any substantial understatement of tax.  Negligence has

---

[6]  Because of respondent's amendments to the motions for judgment on the pleadings, we do not determine the adequacy of petitioners' pleadings with respect to the sec. 6662 penalties. Rule 34(b)(4) provides that the petition shall contain:  "Clear and concise assignments of each and every error which the petitioner alleges to have been committed by the Commissioner in the determination of the deficiency or liability.  * * *  Any issue not raised in the assignments of error shall be deemed to be conceded."  We need not determine whether, in fact, petitioners failed to assign error to respondent's determinations of the sec. 6662 penalties and, thus, are deemed to concede their liabilities for such penalties, thereby allowing for judgment on the pleadings with respect to such liabilities.

been defined as the failure to exercise the due care of a reasonable and ordinarily prudent person under like circumstances. See Neely v. Commissioner, 85 T.C. 934, 947 (1985). A substantial understatement exists for any taxable year if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown on the return for the year or $5,000. See sec. 6662(d)(1)(A).

### 3. Summary Judgment

A summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). "A partial summary adjudication may be made which does not dispose of all the issues in the case." Id. The party moving for summary judgment has the burden of showing the absence of a genuine issue as to any material fact. See, e.g., Espinoza v. Commissioner, 78 T.C. 412, 416 (1982).

### B. Discussion

As noted in our background discussion, petitioners are deemed to have admitted certain facts. The deemed admissions were made pursuant to Rule 90(c). By the deemed admissions, the petitioners have each admitted negligence in the preparation and filing of his (their) income tax return for 1995. The admissions

referred to in Rule 121(b), include those deemed admitted under Rule 90(c).  See, e.g., Marshall v. Commissioner, 85 T.C. 267, 272 (1985).  Respondent can rely on a deemed admission of negligence to show that there is no genuine issue as to any material fact and that the taxpayer was negligent as a matter of law.  See, e.g., Battikhi v. Commissioner, T.C. Memo. 1998-208; McIlvane v. Commissioner, T.C. Memo. 1994-104.  We have here, however, more than conclusory deemed admissions of negligence.  By the deemed admissions, petitioners are also deemed to admit numerous additional facts that, when taken together, establish that each failed to exercise the due care of a reasonable and ordinarily prudent person under like circumstances.  For example, each petitioner is deemed to admit that the Trusts are shams, created primarily for income tax purposes.  Petitioners assigned no error to respondent's determination of a penalty or set forth any facts contradicting respondent's grounds.  We are satisfied that all of the underpayments of tax here in question are attributable to negligence, and so find.

Moreover, by the deemed admissions, petitioners are deemed to admit to copies of their 1995 income tax returns.  We have examined those copies and, based on the deficiencies in tax determined by respondent, which we will sustain, we find that all of the underpayments of tax here in question are attributable to substantial understatements of tax.

C.  Conclusion

Based either on the negligence of petitioners or their substantial understatements of income tax, the motions for partial summary judgment shall be granted.  Petitioners are liable for the section 6662 penalties determined by respondent.

III.  Orders To Show Cause

A.  Penalty Pursuant to Section 6673(a)(1)

1.  Introduction

Petitioners in each of these cases have been ordered to show cause why the Court should not impose a penalty pursuant to section 6673(a)(1) (the order to show cause or the order).  No petitioner has obeyed the order.  Respondent has filed his memorandum of points and authorities in support of the order (respondent's memorandum).  For the reasons that follow, we shall make the order to show cause absolute.

2.  Section 6673(a)(1)

Section 6673 provides for the imposition of penalties and the awarding of costs.  Section 6673(a) applies to proceedings before the Tax Court; in pertinent part, it provides:

> (1) Procedures instituted primarily for delay, etc.
>
>   Whenever it appears to the Tax Court that--
>
>     (A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay,

> (B) the taxpayer's position in such proceeding is frivolous or groundless, or
>
> (C) the taxpayer unreasonably failed to pursue available administrative remedies,

the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $25,000.

### 3. Discussion

A taxpayer's position is frivolous "if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law.  * * *  The inquiry is objective.  If a person should have known that his position is groundless, a court may and should impose sanctions." Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986); see also Hansen v. Commissioner, 820 F.2d 1464, 1470 (9th Cir. 1987) (trial court's finding that taxpayer should have known that claim was frivolous allows for section 6673 penalty); Booker v. Commissioner, T.C. Memo. 1996-261.

We have already concluded that the petitions make nothing but frivolous arguments.  See supra sec. I.B.  Hae-Rong Ni is both petitioner in his own right and, as trustee, petitioner for the trusts.  He was not represented by counsel when he filed the petitions in these cases.  Attached to respondent's memorandum is a copy of a diploma issued by Oregon State University in 1984, conferring on one Hae-Rong Ni the degree of Doctor of Philosophy. In respondent's memorandum, he states that Hae-Rong Ni is highly

educated and, thus, should have been aware that the arguments that he was making on his own behalf and on behalf of the trusts are frivolous. Respondent argues that, had Hae-Rong Ni conducted any research at all, he would have found that courts have rejected similar arguments. Petitioners have failed to respond to respondent's memorandum, and we accept as true respondent's representation as to Hae-Rong Ni's education. We also agree that he should have known that his positions were frivolous. Consequently, we find that petitioners' positions in each of these cases are frivolous.

Moreover, we believe that petitioners both instituted and maintained these proceedings primarily for delay. All of the petitioners filed returns and reported items of income and deduction. Petitioners Hae-Rong and Lucy B. Ni reported total taxes due of $2,516. None of those returns claim that petitioners are not subject to the Federal income tax, as petitioners claim in the petitions. The notices of deficiency are based on the positions taken by petitioners in their returns. Respondent's principal adjustment questions the independent tax existence of the trusts. Other adjustments disallow deductions and other amounts for lack of substantiation. Petitioners have made no attempt to meet respondent's adjustments head on. By the deemed admissions, petitioners admit the following: Neither petitioners Hae-Rong or Lucy B. Ni, in their own right, nor

petitioner Hae-Rong, as trustee of the Trusts, appeared before respondent for the scheduled audit of their (his) return. Neither petitioners Hae-Rong or Lucy B. Ni, nor any representative on their behalf, appeared before respondent to comply with summonses issued to such petitioners even though ordered to do so by the U.S. District Court for the Northern District of California. None of the petitioners have provided records to respondent to substantiate the deductions, losses, and other items claimed by them on their returns, nor do they have such records. Moreover, by the April 25 order, we ordered petitioners to produce documents to respondent and answer his interrogatories. We have reviewed petitioners' responses to the April 25 order, copies of which are attached to the status report (filed by respondent). Those responses are inadequate and, we believe, not made in good faith. It appears to us that petitioners abandoned their return positions before they filed the petitions in these cases. We assume that they concluded that their return positions lacked merit. See, e.g., Johnston v. Commissioner, T.C. Memo. 2000-315 (reviewing "long line of authority" prohibiting assignment to a trust of income earned from rendering personal services). Rather than press positions in which they appear to have lost confidence, petitioners chose, instead, to pursue a strategy of noncooperation and delay,

undertaken behind a smokescreen of frivolous tax-protester arguments.

Clearly, the taxpayers in these cases deserve penalties under section 6673(a)(1). In determining the amounts of those penalties, we take account of the repeated incidents of petitioners' noncooperation and nonresponsiveness, both during respondent's examinations of their returns, see Cary v. Commissioner, T.C. Memo. 1988-128, affd. without published opinion, 900 F.2d 262 (9th Cir. 1990), and during the pendency of this case. We also take account of the fact that, as these proceedings progressed, and counsel appeared for petitioners, petitioners' frivolous arguments multiplied. See infra sec. III. B.3. Finally, we are aware that petitioner Hae-Rong Ni (also known as Frank Ni) is here both in an individual capacity and as trustee for the trusts. By the deemed admissions, petitioners admit that (1) during the taxable year in question, the trusts were the alter egos of petitioners Hae-Rong and Lucy B. Ni and (2) the trusts were shams, created primarily for income tax purposes. Petitioners abandoned their return positions before they filed the petitions in these cases. Since petitioners abandoned their return positions before they filed the petitions in these cases, we assume that petitioners recognize the truth of the deemed admissions, and have brought the Trust cases only to ensure that respondent does not assess the same deficiency

against both the Nis, as individuals, and the Trusts. See supra note 5. However, petitioner Hae-Rong Ni, as trustee, has not limited himself to filing protective petitions in the Trust cases. He has raised the same frivolous arguments with respect to the Trust that he has raised in his individual capacity. Such duplication has served to burden respondent and the Court and delay disposition of these cases. We will, therefore, impose penalties not only on Hae-Rong (and Lucy B.) Ni but also on the Trusts. Taking into account the actions of petitioner Hae-Rong Ni in the Trust cases and petitioners Hae-Rong and Lucy B. Ni in their case, the amounts in dispute in each case, respondent's efforts to dissuade petitioners from their groundless arguments, and the time and effort of the Court required to dispose of these cases, we believe that the maximum penalty, in the amount of $25,000, is appropriate with respect to petitioners Hae-Rong and Lucy B. Ni, and smaller penalties, in the amount of $500 in the case at docket No. 9820-99, and $5,000 in the case at docket No. 9821-99, are appropriate with respect to each of the Trusts.

### 4. Conclusion

The order to show cause shall be made absolute, and petitioner (petitioners) in each case shall pay to the United States a penalty pursuant to section 6673(a)(1) in the amount of $25,000 in docket No. 9822-99, $500 in docket No. 9820-99, and $5,000 in docket No. 9821-99.

B.  Costs Pursuant to Section 6673(a)(2)

   1.  Introduction

Ms. Sluyter has been ordered to show cause why she should not be required to pay costs pursuant to section 6673(a)(2) (the order to show cause or the order).  She has not obeyed the order.  Respondent has filed his memorandum of points and authorities in support of the order (respondent's memorandum), along with the declaration of Paul K. Webb, Esq. (the Webb declaration).  For the reasons that follow, we shall make the order to show cause absolute.

   2.  Section 6673(a)(2)

Section 6673(a)(2) provides for counsel's liability for excessive costs.  In pertinent part, section 6673(a)(2) provides:

> Counsel's liability for excessive costs.  Whenever it appears to the Tax Court that any attorney or other person admitted to practice before the Tax Court has multiplied the proceedings in any case unreasonably and vexatiously, the Tax Court may require--
>
> > (A) that such attorney or other person pay personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct * * *

### 3. Discussion

### a. Bad Faith

Section 6673(a)(2) is a relatively new provision,[7] and, in Harper v. Commissioner, 99 T.C. 533 (1992), we discussed fully the standards for imposing costs under it.  While there may be some question as to whether, before we impose costs, we must find that the attorney or other person admitted to practice before the Tax Court (without distinction, attorney) acted in bad faith, see Harper v. Commissioner, supra at 545, we have no trouble in finding that, in these cases, Ms. Sluyter did act in bad faith. The standard of bad faith that we believe is here satisfied is the standard described by us in Harper v. Commissioner, viz., that the challenged actions are entirely without colorable pretext or basis and are taken for reasons of harassment or delay or for other improper purposes.  Harper v. Commissioner, supra at 546.  For purposes of determining bad faith, a claim is colorable if it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claims.  See Nemeroff v. Abelson, 620 F.2d 339, 348 (2d Cir. 1980) (citing "ABA Model Rules of Professional Conduct" sec. 3.3, Comment (Discussion Draft 1980)); see also Golden Eagle Distrib. Corp. v.

---

[7]  Sec. 6673(a)(2) was added to the Code by sec. 7731(a) of the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106, 2400, and applies to positions taken after Dec. 31, 1989, in proceedings pending on or commenced after such date.

Burroughs, 801 F.2d 1531, 1537 (9th Cir. 1986) (similar standards for imposing sanctions pursuant to Rule 11, Fed. R. Civ. P.).  Bad faith may be found not only in the actions that led to the litigation but also in the conduct of the litigation. See Harper v. Commissioner, supra.

Ms. Sluyter entered her appearances in the consolidated cases on April 10, 2000, after the petitions had been filed.  It is clear that, on that date, Ms. Sluyter was aware of the meritless tax-protester arguments made in the petitions.  On April 4, 2000, a week before her appearances, Ms. Sluyter met with respondent's counsel (the April 4 meeting), and she both repeated and added to the specious arguments made in the petition.  Respondent has provided us with a letter from respondent's counsel to Ms. Sluyter, dated April 11, 2000 (the April 11 letter), analyzing various cases and statutory provisions, and showing the lack of merit in Ms. Sluyter's arguments made at the April 4 meeting.  We have examined the April 11 letter.  It put Ms. Sluyter on clear notice that her arguments were meritless.  Nevertheless, Ms. Sluyter has persisted in those and similar arguments.  She has signed documents submitted to respondent and the Court that contain meritless and, in some instances, inflammatory, statements: e.g.:

> [P]etitioners can show that the individuals of the IRS
> have no legitimate authority over the lives and
> property of petitioners.  The only "authority" these
> individuals have is enforcing their arbitrary will at
> gun point. * * *

------------------

> There is no "entity" commonly called "GOVERNMENT."
> What is referred to as "GOVERNMENT" is nothing more
> than individuals.  These individuals use various
> "titles" appended to their names as if that gives them
> legitimate authority over the lives and property of
> other people.

------------------

> One must also [take] into consideration that most
> of those individuals referred to as "CONGRESSMEN," that
> if they can be identified at all by the respondent, are
> more then likely DEAD or not referred to as
> "CONGRESSMEN" and [sic] longer.  Are petitioners
> subject to the written will of individuals who are
> dead?

------------------

> Just because the petitioners filed so-called
> "RETURNS" out of fear is no evidence that a legitimate
> obligation to do so exists. * * *

We believe that, by those statements, Ms. Sluyter intended to

make legal claims, and those claims are entirely without color.

No attorney could reasonably believe that Ms. Sluyter's "dead

congressmen" claim is more than meritless or the Federal

Government lacks authority to collect income taxes.

Moreover, we believe that Ms. Sluyter made those claims for

delay or other improper purposes.  As stated supra in section

III.A.3, it appears to us that petitioners abandoned their return

positions in favor of a strategy, undertaken behind a smokescreen

of frivolous and tax-protester arguments, of noncooperation and delay. Ms. Sluyter abetted that strategy by reiterating and multiplying those frivolous and tax-protester arguments (see the discussion infra in sec. III.B.3.b). We believe that there is ample evidence that Ms. Sluyter conducted this litigation in bad faith.[8]

### b. Unreasonable and Vexatious Multiplication of Proceedings

In sum, the following actions, among others, lead us to believe that Ms. Sluyter unreasonably and vexatiously multiplied the proceedings before the Court:[9]

Petitioners' motions for protective order were made on April 10, 2000, the day Ms. Sluyter entered her appearances. The motions were signed by Ms. Sluyter. Those motions were made in response to respondent's discovery requests. We ordered respondent to respond and, after considering that response, denied the motions. In essence, the memoranda that accompany the motions state that, until respondent proves that he has

---

[8] Rule 201 (a) provides: "Practitioners before the Court shall carry on their practice in accordance with the letter and spirit of the Model Rules of Professional Conduct of the American Bar Association." (Model Rules.) Our finding that Ms. Sluyter conducted this litigation in bad faith brings into question her conduct under the Model Rules. See, e.g., Model Rules 3.1, 3.2, and 3.3.

[9] In relevant part, the term "vexatious" means to cause or create, or intended to cause or create, vexation or annoyance. The American Heritage Dictionary 1915 (4th ed. 2000).

legitimate authority over petitioners' lives and property, they should not be required to comply with respondent's requests for discovery. We again point out that petitioners filed returns reporting items of income and deduction. Section 7602(a)(1) establishes the Secretary's authority to examine a taxpayer's books and records to determine the correctness of any return. Clearly, Ms. Sluyter knew that when she signed the motion. We say that because respondent has brought to our attention another proceeding in which Ms. Sluyter represented tax-protesters challenging the Commissioner's summons enforcement action. That proceeding, Zimmerman v. United States, 85 AFTR 2d 2000-1091; 2000-1 USTC par. 50,295 (E.D. Cal. 2000), involves findings and recommendations submitted by U.S. Magistrate Judge O'Neill to the Hon. Anthony W. Ishii, Judge, U.S. District Court for the Eastern District of California. In his findings and recommendations (all of which are adverse to the Zimmermans), Magistrate Judge O'Neill states that, under section 7602(a)(1), to ascertain the correctness of any return, the "Secretary is authorized to examine 'any books, papers, records, or other data which may be relevant or material' for IRS inquiry".[10] Id. Moreover,

---

[10] In Zimmerman v. United States, 86 AFTR 2d 2000-7027, 2000-2 USTC par. ___ (E.D. Cal. 2000), Judge Ishii imposed sanctions against Ms. Sluyter under Fed. R. Civ. P. 11 for tax-protester type arguments that she had advanced in the proceeding discussed in the text and in a related, subsequent proceeding.

respondent's right to obtain discovery is established by our Rules.  See Rule 70(a).  The motions were groundless, and Ms. Sluyter had reason to know that; the motions served no purpose other than to delay these proceedings and annoy the Court and respondent.

Ms. Sluyter also signed Petitioners' Objections to Respondent's Motion for Judgment on the Pleadings and Supporting Memorandum.  That document makes the unsupported statement that petitioners have no bona fide political relationship to the United States and the frivolous argument that there is no evidence that petitioners "are subject to the written will of individuals called CONGRESSMEN".  It accompanied Ms. Sluyter's affidavit stating:  "There is a factual dispute as to the Petitioners relationship to the United States and the State of California."  No legitimate factual dispute is raised in the pleadings or was otherwise before the Court.  The response was unreasonable and contributed to the delay in concluding these proceedings.

We have detailed the subpoenas signed by Ms. Sluyter. Respondent moved to quash the subpoenas, and petitioners filed the response to the motions to quash.  Among those subpoenaed was Charles Rossotti, Commissioner of Internal Revenue.  At the trial session, we denied the motions to quash on the grounds that no trial was held and the subpoenas were no longer in force.  We

agree, however, with the principal argument made by respondent in the motions to quash:  viz., the testimony of the subpoenaed witnesses is irrelevant to the Court's redetermination of the deficiencies determined by respondent.  The statement in the response to the motions to quash that the issue before the Court is whether the IRS and the U.S. Government "have legitimate authority over the lives and property of the petitioners" is, as we have discussed, groundless, and served only to unreasonably protract these proceedings.  Moreover, the response contains the unsupported (and unsupportable) charge that respondent's counsel lied about <u>Zimmerman v. United States</u>, <u>supra</u>.  The response also claims, without support:  "Each witness has initiated force against the petitioners."  Such charges can only have been made to vex or distress respondent, his counsel, and this Court.

From the time Ms. Sluyter entered her appearances in these cases to the present, she has acted to multiply these proceedings by actions that are both unreasonable and vexatious.  There remains only the question of the amount of costs we shall require her to pay.

### 4.  <u>Costs</u>

"Attorney's fees awarded under section 6673(a)(2) are to be computed by multiplying the number of excess hours reasonably expended on the litigation by a reasonable hourly rate.  The product is known as the 'lodestar' amount."  <u>Harper v.</u>

Commissioner, 99 T.C. at 549. Respondent has submitted respondent's memorandum in support of the order to show cause. In support of respondent's memorandum, respondent has submitted the Webb declaration (declaration of Paul K. Webb, respondent's counsel). Attached to the Webb declaration are copies of respondent's internal time keeping records, reflecting the total time expended on the consolidated cases by, among others, attorneys Paul K. Webb, Dale A. Zusi, and Debra K. Moe. Their total time spent working on the cases is set forth, as well as their time spent working on the cases since the appearance of Ms. Sluyter. Since the appearance of Ms. Sluyter, the hours spent working on the cases by Mr. Webb, Ms. Zusi, and Ms. Moe are 202.75, 17.25, and 13.5, respectively. Respondent asks reimbursement only for those hours spent by his attorneys on tasks that would not have been required in the absence of Ms. Sluyter's "vexatious actions multiplying these proceedings" (excess hours).

Respondent asks reimbursement for 56.75 hours of Mr. Webb's time, at a rate of $125 an hour. Mr. Webb is the attorney with day-to-day responsibility for the cases. He is an attorney employed in respondent's San Jose, California, District Counsel's office. He has been a member of the California State Bar since 1987. He has detailed the time he spent on the cases, which involved time spent on research, drafting, review of submissions

to the Court, and appearances.  Based in part on the costs of living and attorney wages in San Jose, California, respondent asks reimbursement at a rate of $125 an hour for Mr. Webb's time. The hourly rate properly charged for the time of a Government attorney is the "amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation." Harper v. Commissioner, 99 T.C. at 551.  Petitioners and Ms. Sluyter have made no response to the order to show cause.  We have no reason to believe that $125 an hour is not a reasonable hourly charge for Mr. Webb's time or that 56.75 is not the number of excess hours Mr. Webb expended on this litigation.  We are familiar with the procedural and factual history of this case and believe that 56.75 hours was reasonably necessary for Mr. Webb to do the work he described.  See United States v. $12,248 U.S. Currency, 957 F.2d 1513, 1520 (9th Cir. 1992).  We find that $125 is a reasonable hourly charge for Mr. Webb's time and 56.75 is the number of excess hours he reasonably expended on this litigation. The lodestar amount for Mr. Webb's time is $7,093.75.

Respondent asks reimbursement for 10.25 hours of Ms. Zusi's time, at a rate of $200 an hour.  Ms. Zusi is the abusive trust coordinating attorney for the Central California District of the IRS.  She has practiced law for more than 15 years, both with District Counsel and as a trial attorney and Assistant U.S.

Attorney with the Department of Justice. Ms. Zusi's hours were spent on research, advice, review of submissions in these cases, and appearances. Also based on local rates of compensation for attorneys, respondent asks reimbursement at a rate of $200 an hour for Ms. Zusi's time. For similar reasons as with respect to Mr. Webb, we find that $200 is a reasonable hourly charge for Ms. Zusi's time and 10.25 is the number of excess hours she reasonably expended on this litigation. The lodestar amount for Ms. Zusi's time is $2,050.

Respondent asks reimbursement for 7.5 hours of Ms. Moe's time, at a rate of $200 an hour. Ms. Moe is Mr. Webb's supervisor. She is an Assistant District Counsel in respondent's San Jose, California, District Counsel's office. Ms. Moe has been practicing law since 1982. Also based on local rates of compensation for attorneys, respondent asks reimbursement at a rate of $200 an hour for Ms. Moe's time. For similar reasons as with respect to Mr. Webb, we find that $200 is a reasonable hourly charge for Ms. Moe's time and 7.5 is the number of excess hours she reasonably expended on this litigation The lodestar amount for Ms. Moe's time is $1,500.

The total lodestar amount for the time of Mr. Webb, Ms. Zusi, and Ms. Moe is $10,643.75. Respondent has not itemized costs for travel expense, photocopying, or supplies used in preparing the cases. Respondent limits his request for costs to

the total lodestar amount.  We shall require Ms. Sluyter to pay costs in that amount.

C.  Conclusion

We find that $10,643.75 is a reasonable amount for respondent's excess attorney's fees incurred by reason of Ms. Sluyter's unreasonable and vexatious multiplication of these proceedings.  Therefore, we shall make the order to show cause absolute and order Ms. Sluyter personally to pay respondent $10,643.75 pursuant to section 6673(a)(2), that she make payment by means of a certified check, cashier's check, or money order in favor of the IRS, that such payment be delivered to respondent's counsel at the Office of District Counsel in San Jose, California, not later than 30 days from the date the order is served, and that respondent report to the Court if such payment is not timely received.

IV.  Conclusion

To reflect the foregoing,

An appropriate order imposing a sanction on Crystal D. Sluyter shall be issued, and other appropriate orders shall be issued.