116 T.C. No. 10


UNITED STATES TAX COURT


SHIRLEY L. JOHNSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

NJSJ ASSET MANAGEMENT TRUST, SHIRLEY L. JOHNSON, TRUSTEE,
Petitioner <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 6452-99, 6453-99.     Filed February 27, 2001.


     <u>Held</u>:  Petitions by J, individually and as
trustee, are dismissed for lack of prosecution.
Attorney's fees are awarded under I.R.C. sec.
6673(a)(2) against petitioners' counsel, who multiplied
the proceedings unreasonably and vexatiously.


     <u>Joe Alfred Izen, Jr.</u>, and <u>Jane Afton Izen</u>, for petitioners.

     <u>Christina D. Moss</u>, <u>Elizabeth Girafalco Chirich</u>, and

<u>Marion S. Friedman</u>, for respondent.

## OPINION

COHEN, Judge:  In the case at docket No. 6452-99, respondent determined deficiencies of $12,476 and $15,260 and accuracy-related penalties under section 6662(a) of $2,495.20 and $3,052, with respect to Federal income taxes of petitioner Shirley L. Johnson (Johnson) for 1996 and 1997, respectively.  The deficiencies and penalties were attributable to adjustments related to Johnson's receipt of income from NJSJ Asset Management Trust (NJSJ Trust).

In the case at docket No. 6453-99, respondent determined deficiencies of $14,056 and $17,593 and accuracy-related penalties under section 6662(a) of $2,811 and $3,519 with respect to petitioner NJSJ Trust's tax liability for 1996 and 1997, respectively.  Those deficiencies were attributable to respondent's disallowance of Schedule C, Profit or Loss From Business, expenses, charitable contributions, and an income distribution deduction claimed by NJSJ Trust.

The primary issue in these consolidated cases is whether income reported by NJSJ Trust is taxable to Johnson on alternative grounds of lack of economic substance, assignment of income, or grantor trust principles.  The cases are now before the Court, however, on respondent's motions to dismiss each of the cases for lack of prosecution and for the Court to determine the penalty to be awarded to the United States against

petitioners' counsel, Joe Alfred Izen, Jr. (Izen), under section 6673(a)(2)(A). Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The petitions in these cases were filed by Johnson, individually and as trustee of the NJSJ Trust, on April 5, 1999. In each case, Houston, Texas, was designated by petitioners as the place of trial, although Johnson resided in Indiana at the time. The cases were first set for trial at a session set for Houston on October 25, 1999. Izen entered his appearances in these cases on August 4, 1999, and October 18, 1999, respectively. Izen is a resident of Texas.

On or about 75 days before the October 25, 1999, trial date, the last day for serving formal discovery in accordance with Rule 70(a)(2), respondent served first sets of interrogatories and requests for production of documents on petitioners. Thirty days later, on the last day for filing motions to compel discovery, respondent filed motions to compel responses to the first sets of interrogatories and requests for production of documents, requesting sanctions in the event that petitioners failed to comply with Court-ordered discovery. Respondent's motions to compel discovery were granted.

Although petitioners served responses to the interrogatories and requests for production, the response to most of the interrogatories and requests consisted of the words "Fifth Amendment" in lieu of the requested information. Thereafter, in replying to respondent's status report questioning the good faith of petitioners' responses, petitioners filed Motions for In Camera Review of Discovery Responses and Entry of Order Abating Case. Petitioners asserted that an ongoing criminal investigation of abusive trusts justified petitioners' assertion of the Fifth Amendment privilege.

Petitioners' motions for in camera review and for "abatement" and respondent's subsequent motions to impose sanctions were heard in Houston on October 25, 1999. Petitioners' motions were denied. Petitioners were ordered to turn over to respondent certain documents, and respondent's motions for sanctions were denied. The cases were continued, and the parties were ordered to file status reports describing the status of discovery and proposing mutually acceptable dates for trial in Washington, D.C. After the reports were filed, the cases were calendared for trial in Washington, D.C., on May 3, 2000.

As anticipated by the Court's order setting the cases for trial in Washington, D.C., further discovery requests were served by respondent on petitioners. The Court was involved in attempts

to encourage informal exchange of information and informal discovery, through conference telephone calls and status reports from the parties. Petitioners failed to comply, and respondent filed motions to compel responses. Respondent's motions were granted, and petitioners were ordered to provide responses on or before April 7, 2000. The Court's order included the following:

> ORDERED that in the event petitioners do not fully comply with the provisions of this Order, this Court may impose sanctions pursuant to Tax Court Rule 104, which may include dismissal of these cases and entry of a decision against petitioners.

Petitioners failed to comply, and a Motion to Impose Sanctions was filed by respondent. Johnson filed a Notice of Petitioner's Temporary Incapacity, claiming that Johnson's physical condition precluded her participation in the trial set in Washington, D.C. The Court continued the cases for trial to the December 4, 2000, regular trial session previously set in Houston, but the cases remained calendared for hearing on respondent's Motion to Impose Sanctions on May 3, 2000, in Washington, D.C.

At the May 3, 2000, hearing, Izen's associate, Jane Afton Izen, appeared for petitioners. Petitioners were directed to provide further answers to interrogatories and to produce certain documents. Specifically, with respect to interrogatory No. 38 of the second set of interrogatories, the following colloquy occurred:

THE COURT: The respondent has asked for universities and colleges attended. Have you been able to provide that information?

MS. IZEN: I suppose that we could supplement that with the names of the universities.

THE COURT: Respondent has asked for that information, the areas of study and degrees awarded. Have you provided that information?

MS. IZEN: I don't see the specific names of the university. It says she had two years of college, and it does say colleges attended. So we could get the name of that.

THE COURT: I would direct that within two weeks you provide that supplemental information to respondent.

Are there other specific aspects of Interrogatory No. 38 that you feel have not been satisfied, Ms. Chirich?

MS. CHIRICH: No. We were just curious about whether she had training in accounting. She either does or doesn't. It's not specific enough on her resume to let us know what kind of training she has had to do the job she is doing for this company that we think is selling the trusts. We don't know whether she is a sales person in that company. That is why we are looking to see what her duties are. Or whether she merely just types letters and envelopes or whether she actually promotes and gives seminars herself on these trusts.

MS. IZEN: Your Honor, I respectfully submit that that really doesn't get to the basics of this lady's tax stuff. The types of questions that they are asking appear to be for other reasons. What they did was took her information and they disallowed all of her business expenses. The issue of whether or not she should have gone into a trust is totally separate from substantiating her business deductions. The way they phrased that, that they want to know whether she had accounting experience, doesn't have anything to do with the issue.

THE COURT: I cannot say that it's not likely to lead to discovery of admissible evidence, Ms. Izen. So I do not view the interrogatory as seeking irrelevant information. The information, it seems to me, ought to be readily at her disposal. I would direct that you provide respondent a complete answer to Interrogatory No. 38, including areas of study and universities and colleges attended, within two weeks.

MS. IZEN: We'll do that, Your Honor.

In an Order dated May 30, 2000, the Court stated, among other things:

> At the hearing on May 3, 2000, the Court questioned petitioners' good faith in complying with the Court's Orders. Those doubts are reinforced by petitioners' May 22, 2000, motion [requesting a 14-day extension of the May 17, 2000, due date]. The allegedly heavy workload of petitioners' counsel is not a valid ground for failing to comply with the Court's Orders. If petitioners' counsel is too busy to prosecute * * * [these cases] properly, then petitioners' counsel should consider withdrawing. Upon due consideration, it is

> ORDERED that petitioners' motion for enlargement of time within which to respond to respondent's second set of interrogatories is granted, in that petitioners are ordered no later than June 1, 2000, to serve on respondent's counsel, and provide to the Court, full, complete, and responsive answers, made under oath and in good faith, to interrogatories numbered 37, 38, and 39, as set forth in respondent's second interrogatories to petitioners.

> If petitioners fail to comply with this Order, the Court shall impose sanctions, which may include, without limitation, sanctions under I.R.C. section 6673(a) and Tax Court Rule 202, and precluding petitioners from introducing evidence with regard to respondent's determination that petitioners are liable for additions to tax under I.R.C. section 6662(a).

Despite further extensions and delays, petitioners have never answered interrogatory No. 38.

In an Order and Order to Show Cause dated July 20, 2000, the Court ordered that respondent supplement his Motion to Impose Sanctions with a detailed statement of any responses not yet provided by petitioners and the manner in which petitioners' failure to provide such responses prejudices respondent in preparation of these cases for trial. The Court further ordered that petitioners show cause in writing why sanctions should not be imposed upon petitioners in accordance with the Court's Order dated May 30, 2000.

In respondent's Supplement to Motion to Impose Sanctions, respondent contended that petitioners' failure to provide a response to interrogatory No. 38 interferes with respondent's preparation of the negligence penalties issues in these cases. In response to the order to show cause, petitioners persisted in the unpersuasive contention that Johnson's health problems prevented compliance with the Court's orders. Petitioners' counsel, Izen, asserted that he inadvertently failed to comply with the order with respect to interrogatory No. 38.

By Order dated August 21, 2000, the Court's Order and Order to Show Cause was made absolute. Respondent's motion for sanctions as supplemented was granted in that petitioners were precluded at trial from introducing evidence with regard to penalties under section 6662(a). The Court Order provided:

> as a further sanction, because it appears to the Court
> that petitioners' counsel, Joe Alfred Izen, Jr., has

> multiplied the proceedings in these cases unreasonably and vexatiously, Joe Alfred Izen, Jr., shall pay personally the excess costs, expenses, and attorney's fees reasonably incurred because of his conduct in these cases.  * * *

The Order also provided that, at the time of trial in Houston on December 4, 2000, respondent would present evidence as to the excess costs, expenses, and attorney's fees reasonably incurred because of the conduct of Izen by which he multiplied the proceedings unreasonably and vexatiously.

Although, in seeking various delays throughout these cases, Izen has represented that he had trial commitments in Seattle, Washington; San Diego, California; Portland, Oregon; Denver, Colorado; Cleveland, Ohio; Salt Lake City, Utah; Chicago, Illinois; Phoenix, Arizona; and various places in Texas, and notwithstanding Johnson's claims that she could not appear at trial because of illness, Johnson never sought to change the place of trial to Indianapolis, closer to her home in Indiana. Instead, on or about November 17, 2000, Izen sent to the Court and to respondent a motion for leave to take Johnson's deposition "under Rule 75".  The motion was returned unfiled because it was untimely and improper under the Court's Rules.  (There was no attempt to comply with Rule 81, dealing with depositions to perpetuate testimony.)  Respondent served a notice of objection on Johnson, pointing out noncompliance with the Tax Court Rules and inadequate notice to respondent.

Nonetheless, Izen proceeded to take Johnson's ex parte statement in the form of a deposition and sought to use it as evidence in these cases. Petitioners' trial memorandum, due November 17, 2000, and mailed November 27, 2000, with a false certificate of service representing that it was mailed on November 22, 2000, indicated that Johnson would testify "through deposition testimony" concerning the NJSJ Trust, discovery, ill health, and an ongoing criminal investigation. (The dates are mentioned because they are consistent with Izen's chronic delinquency in filings and misrepresentations in these cases and in the other cases mentioned below.) In attempting to justify his noticing of a deposition of his own client, a party, contrary to the Rules of the Court, Izen claims that the pendency of a sanctions order against him makes Johnson "not a party" to a "proceeding within a proceeding". The statement that he secured from Johnson dealt solely with her health, her efforts to secure certain bank checks in response to discovery requests, her assertion of the Fifth Amendment privilege, and her desire to withdraw the petition and instruction to Izen not to pursue the case. No testimony was attempted with respect to the merits of the within cases.

At the time of trial, petitioners were not ready and did not intend to proceed. Izen objected to the attorney's fees claimed by respondent to the extent that they included fees incurred in

relation to the rejected Fifth Amendment claims by Johnson.  He
again admitted fault in failing to answer interrogatory No. 38.
He stated:

> I'd like it established how much of this work has to do
> with the Fifth Amendment and other impermissible
> concerns, and how much of it has to do with the
> Washington, D.C., hearing.  If I pay for the
> Washington, D.C., hearing, that's 4-, $5,000.  If I'm
> at fault for that, I'll pay that.  I mean, that's the
> position that I'm taking.
>
> *     *     *     *     *     *     *
>
> * * *  I think I have made a mistake, based on what you
> have said, and I always believe somebody should own up
> and pay for their mistakes, whatever they are, whether
> it's paying interest or whatever.

Although respondent's counsel conceded amounts of fees incurred
on dates prior to October 25, 1999, the parties were unable to
reach agreement as to the amount of fees to be ordered.

## Discussion

Petitioners never fully complied with the outstanding
discovery orders, were not prepared for trial, and Johnson
indicated through Izen that she wanted to withdraw her petition.
The petitions cannot be "withdrawn" without decisions against
petitioners.  See sec. 7459(d); Estate of Ming v. Commissioner,
62 T.C. 519 (1974).  Dismissal for failure to prosecute, as
sought by respondent's motions, is appropriate.  See Rules
104(c)(3), 123(b), 149.  Respondent's motion with respect to
Johnson seeks determination of deficiencies in amounts that have
been adjusted downward from the notice of deficiency due to

concessions by respondent. Respondent has agreed that, inasmuch as the deficiencies determined against the NJSJ Trust are in the alternative as a means of protecting respondent against whipsaw, entry of a decision that there are no deficiencies against the NJSJ Trust may await either an appeal by Johnson or finality of the decision in Johnson's case without an appeal.

We have no doubt that dismissal of the petitions and entry of decisions against petitioners is not an unjust result in these cases. The record supports the inference that petitioners never intended to try these cases on the merits. Petitioners have brought into the record indications of criminal investigations of trusts similar to the one involved here, and petitioners' counsel has, in effect, represented that these cases are indistinguishable from Muhich v. Commissioner, T.C. Memo. 1999-192, affd. ___ F.3d ___ (7th Cir., Jan. 25, 2001). In that case, the Court held, among other things, that certain trusts should be disregarded for tax purposes because they lacked economic substance and that the taxpayers were liable for accuracy-related penalties under section 6662(a). This Court declined to impose a penalty under section 6673(a), stating:

> We decline to impose a penalty under section 6673. Although the Muhichs' position that the trusts had economic substance was frivolous, we have rejected respondent's position [that] the "consulting fees" were dividends, holding instead the "fees" were compensation. The Muhichs' position in this proceeding was somewhat meritorious to the extent they were defending against respondent's determination of

> constructive dividends. We admonish the Muhichs that
> we shall not be inclined to exercise our discretion
> under section 6673 so favorably in the future if
> presented with similar arguments by them, and we may
> impose a penalty.

Also in the record in these cases is a transcript and a copy of a stipulated decision in <u>Crockett v. Commissioner</u>, docket No. 20759-97, which also involved a sham or abusive trust. In that case, the decision entered pursuant to stipulation of the parties included a penalty under section 6673 against Izen's client.

In these cases, in view of Izen's express admissions that he was responsible for the failure to comply with discovery orders, we believe that the penalty should be imposed on him. Although he conceded at the time of hearing that he was wrong and that he would pay, he has argued in written documents that "mere negligence" was not enough to justify a sanction. There may be some question as to whether, before we impose costs, we must find that Izen acted in bad faith. See <u>The Nis Family Trust v. Commissioner</u>, 115 T.C. 523 (2000). We have no trouble finding that, in these cases, he did.

Izen has a long history of involvement with sham trusts, both as counsel of record and as counsel rendering an opinion on which taxpayers unfortunately relied. See, e.g., <u>United States v. Buttorff</u>, 761 F.2d 1056 (5th Cir. 1985), affg. 563 F. Supp. 450 (N.D. Tex. 1983); <u>Watson v. Commissioner</u>, 690 F.2d 429 (5th Cir. 1982); <u>Lund v. Commissioner</u>, T.C. Memo. 2000-334; <u>Para</u>

Techs. Trust v. Commissioner, T.C. Memo. 1994-366, affd. without published opinion sub nom. Anderson v. Commissioner, 106 F.3d 406 (9th Cir. 1997); Ripley v. Commissioner, T.C. Memo. 1987-114. In Trenerry v. Commissioner, T.C. Memo. 1994-500, the taxpayer appeared pro se in a case in which the Court held that a trust was to be disregarded for tax purposes. The Court stated:

> Petitioner relies on two legal opinion letters of Joe Alfred Izen, Jr. (hereinafter sometimes referred to as Izen) which she had obtained from Century. Izen's opinion letters, addressed to Century, dated September 25, 1986, discuss the legal status and tax status of contractual trust companies. Although Izen's opinion letters are dated almost 4 years after our published opinion in Zmuda [v. Commissioner, 79 T.C. 714 (1982), affd. 731 F.2d 1417 (9th Cir. 1984)] (and more than 2 years after the published Court of Appeals affirmance), neither of his opinion letters refers to Zmuda. We note the August 15, 1984, changes to the Trenerry Trust, in which petitioner (as grantor) warned herself (as trustee) "to beware of attorneys and to avoid them whenever at all possible." Perhaps this was one instance in which petitioner should have followed her own advice. The Izen opinion letters do not help petitioner on the evidence in the instant case. [Fn. ref. omitted.]

See also Para Techs. Trust v. Commissioner, T.C. Memo. 1992-575.

Cases in which Izen was counsel also reflect chronic failure to comply with discovery orders or Court Rules. In Oelze v. Commissioner, 723 F.2d 1162 (5th Cir. 1983), the Court of Appeals affirmed dismissal of petitions where, in response to the Tax Court's repeated orders to comply with the Commissioner's discovery requests and admonishments that failure to comply would

result in dismissal, the taxpayer only partially complied with the orders.  The Court of Appeals stated:

> Numerous delays caused by the Oelzes, including their repeated failure to provide the requested information based on their unsupported fifth amendment claim, required the tax court to issue at different times three more discovery orders.  None of these ever resulted in the Commissioner's obtaining the information he needed.  [Id. at 1163.]

In response to a petition for rehearing filed by Izen in Oelze, the Court of Appeals stated:

> The taxpayer's continued failure to cooperate with the Commissioner, the necessity for four orders to comply with the Commissioner's discovery requests, the taxpayer's continuous reliance on a baseless fifth amendment claim, and the taxpayer's last-minute attempt to comply with the discovery order all demonstrate that Oelze acted wilfully.  Additionally, the Tax Court issued four separate discovery orders, some explicitly warning the taxpayer that failure to comply would result in dismissal of the case.  Though the taxpayer finally did partially comply with one of the orders, he did so only after repeated and total failure to supply the Commissioner with the information he requested.  Such partial compliance under these circumstances cannot serve to exonerate the taxpayer from willful failure to comply with the orders of the Court.  [Oelze v. Commissioner, 726 F.2d 165, 166 (5th Cir. 1983).]

Similarly, see Watson v. Commissioner, supra; Ripley v. Commissioner, supra.

Izen's persistence in unproductive tactics sometimes has the unfortunate effect of reducing the quality of practice before this Court on both sides.  In Tumlinson v. Commissioner, T.C. Memo. 1983-92, the Court faced various procedural questions as a

result of the taxpayers' failure to respond to requests for admissions or to comply with other Rules. The Court stated:

> We have not found this case to be particularly satisfying. The record before us is sketchy. The case appears to revolve around a family trust but we have been told very little about it. In addition, the various returns filed by petitioners are confusing because of the inconsistent treatment of the items reported therein. All of this is compounded by the seemingly contradictory positions taken by petitioners before this Court and by respondent's failure to be more precise in his requests for admissions. Be this as it may, we have tried our best to reach a just result.

See also Ripley v. Commissioner, T.C. Memo. 1985-555. Izen's tactics demean the process and those involved in it and accomplish nothing. In the language of section 6673(a)(2), it appears to the Court that Izen "has multiplied the proceedings in * * * [these cases] unreasonably and vexatiously". He has persisted in these tactics despite warnings and sanctions imposed on his clients in similar cases. He has pursued claims that have been rejected so frequently that they are "entirely without colorable pretext or basis and are taken for reasons of harassment or delay or for other improper purposes." The Nis Family Trust v. Commissioner, supra at 548; see Harper v. Commissioner, 99 T.C. 533, 546-549 (1992). An award under section 6673 is fully justified.

Although the Court rejected Johnson's Fifth Amendment claims, we exclude from the award the fees that are attributable to those and to the first round of discovery motions. Our

calculations begin with March 15, 2000, when respondent's counsel was required to draft motions to compel responses to the second sets of interrogatories and requests for production of documents, and after the Court had engaged in several attempts to secure Johnson's cooperation in informal discovery. Izen has conceded that he would pay the expenses relating to respondent's counsel's trip to Washington, D.C., for the sanctions hearing in May 2000. He has not challenged respondent's submitted time records nor the $150 hourly rate requested. In addition, respondent should be compensated for time spent subsequent to the May 3, 2000, hearing as a consequence of petitioners' continued failure to comply with the Court's order issued at the conclusion of that hearing. In that regard, the records reflect a total of 31.5 hours by Christina D. Moss and 25.75 hours by Elizabeth Girafalco Chirich. We believe that the fees requested for these services are reasonable. The amount to be awarded is, therefore, a total of 57.25 hours at $150 per hour, or $8,587.50, plus $807.06 in travel expenses for respondent's counsels' trip to Washington.

To reflect the foregoing,

<u>Appropriate orders of dismissal and decision will be entered</u>.