T.C. Memo. 2002-163


UNITED STATES TAX COURT


FRANK GEORGE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6604-01.                    Filed June 27, 2002.


Frank George, pro se.

<u>Anne W. Durning</u>, for respondent.


MEMORANDUM OPINION


COHEN, <u>Judge</u>:  Respondent determined deficiencies of $66,470

and $90,777 in petitioner's Federal income taxes for 1996 and

1997, respectively, and determined penalties under section 6662

of $13,294 and $18,155 for those years, respectively.  The issues

for decision are whether petitioner had unreported income for

services rendered as an osteopathic physician or as a homeopathic

physician, whether the Court has jurisdiction to make that determination where the income was reported by a limited liability company (LLC) that filed a petition in bankruptcy subsequent to the years in issue, and whether a penalty under section 6673 should be awarded to the United States. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Some of the facts have been stipulated, and the stipulated facts are incorporated in these findings by this reference. Petitioner resided in Arizona at the time that he filed his petition. His income tax liability for 1993 and 1994 was the subject of litigation in this Court that was decided in a Memorandum Opinion of this Court, George v. Commissioner, T.C. Memo. 1999-381.

In June 1993, petitioner and Jimmy C. Chisum (Chisum) formed Arivada Health Enterprises Trust (Arivada). Petitioner transferred his osteopathic medical practice, which he formerly operated as a sole proprietorship, to Arivada when it was formed. The operations of Arivada in 1996 and 1997 were not significantly different from the operations for 1993 and 1994. During 1996 and 1997, Arivada paid the personal expenses of petitioner for his home and automobile.

Using funds from Arivada's account in the amount of $31,198.16, petitioner purchased a home on Ludlow Drive in Scottsdale, Arizona. Petitioner purchased the home in the name of the woman with whom he was then romantically involved to avoid holding property that would be subject to the claims of his creditors, including the Internal Revenue Service (IRS).

Holistic Osteopathic Medical Care, PLLC (HOMC), was formed on June 7, 1994, as a professional limited liability company under Arizona law. HOMC was a member-managed LLC, and petitioner was the manager. Petitioner was the sole patient care provider for HOMC during 1996 and 1997. During 1996 and 1997, the gross receipts for petitioner's medical practice were deposited into accounts in the name of HOMC.

HOMC filed partnership income tax returns, Form 1065, U.S. Partnership Return of Income, for each of the years 1994 through 1997. On Forms K-1, Partner's Share of Income, Credits, Deductions, etc., attached to HOMC's returns for 1996 and 1997, petitioner was reported as a partner with a 10-percent ownership interest and Arivada was reported as a partner with a 90-percent ownership interest.

For reasons set forth in T.C. Memo. 1999-381, Arivada is not a trust recognized for Federal income tax purposes. The purpose for the transfer of property to the trust was tax avoidance, and

money paid to the trust for petitioner's services is taxable income to petitioner.

During 1998, the IRS commenced an examination of petitioner's returns for the years in issue. The revenue agent reviewed petitioner's returns, Arivada's returns, HOMC's returns, correspondence from petitioner to various other employees of the IRS, documents at the Arizona Corporation Commission and the recorder's office, records for bank accounts, and checks signed by petitioner. The revenue agent issued summonses for bank account records and analyzed them, concluding that the deposits shown were similar to the amounts reported on the HOMC returns. Petitioner did not provide any documents during the examination and did not meet with the revenue agent who had audited his account until December 6, 2001, less than 2 months before trial of this case.

Petitioner filed a chapter 13 bankruptcy petition with the U.S. Bankruptcy Court for the District of Arizona on October 19, 1998. On October 21, 1998, the bankruptcy court lifted the stay so that litigation in petitioner's case for 1993 and 1994 could proceed. The notice of deficiency in this case was sent to petitioner on July 3, 2000. Petitioner's chapter 13 bankruptcy case was dismissed on December 26, 2000.

Arivada filed a bankruptcy petition on or about October 22, 1998. Arivada's bankruptcy case was dismissed on November 23,

1998, by reason of Arivada's failure to file a timely list of creditors in the proper format and failure to file timely the schedules and statements required by the bankruptcy rules.

The notice of deficiency sent to petitioner, after a detailed explanation, concluded in part:

> In this case, the business operation was not altered by the formation of trust; and subsequently, a limited liability partnership with the trust as partner. Before, the business was operated as a sole proprietor; after, the individual was a partner with a minimal interest. The majority of the distributions were allocated to the trust partner, who then "distributed" income to two foreign beneficiaries.
>
> The taxpayer has failed to substantiate that a valid trust was created. In any event, the trust and partnership arrangement should be disregarded for Federal Income Tax purposes because it lacks economic substance. As a result, the income and expenses for the partnership are attributable to the individual partner.
>
> As the partner, Arivada, has been determined to be established primarily for tax avoidance and determined to be a sham, the income will be distributed 100% to partner, George. However, to protect the interest of the government, an inconsistent position will be taken and income distributed 100% to partner, Arivada, also.
>
> Due to the filing of the bankruptcy, all adjustments will become nonpartnership items, and adjustments made with non-TEFRA [Tax Equity & Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324 (TEFRA)] procedures.

The statutory notice included explanations of the penalties and other adjustments that have now been conceded by respondent or not contested by petitioner.

## Discussion

Petitioner has not pointed to any specific items of income or deductions that were not correctly determined by respondent, and he has not shown that respondent's determination is erroneous as to any fact set forth in the statutory notice. Except to the extent that concessions have been made, the record fully supports respondent's determination that income reported by HOMC or allegedly belonging to Arivada is attributable to the services provided by petitioner during the years in issue and, thus, is taxable to him. The record also supports respondent's determination of the penalties under section 6662, for the reasons stated in the opinion in T.C. Memo. 1999-381. In view of petitioner's failure to address these issues, we need not repeat our discussion and resolution of the same issues addressed in the opinion in T.C. Memo. 1999-381.

Petitioner has relied on a variety of procedural arguments. At the time of trial, petitioner filed various motions substantially identical to those filed by other taxpayers whose cases were calendared for trial at the same time. See Ruocco v. Commissioner, T.C. Memo. 2002-91. He filed a Motion to Continue that, without any factual foundation, asserted: "Any other case, in which the government prejudices are not present, would not have been calendared for more than a year after the Answer was filed." Obviously, petitioner is not familiar with the current

state of the Court's docket. Cases are calendared for trial on the next calendar set after the Answer is filed. See Rule 131.

Among the motions filed on January 28, 2002, was a Motion in Limine in which petitioner argued that the Court lacked jurisdiction in this case because the HOMC was subject to TEFRA proceedings under section 6231(a)(1)(B)(i). Attached to that motion was a copy of the order dismissing Arivada's bankruptcy petition. In petitioner's posttrial briefs filed in this case, he argues that dismissal of the bankruptcy proceeding should have the same effect as if the proceeding had never occurred.

Respondent relies on the following provision of section 301.6231(c)-7T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987):

> (a) <u>Bankruptcy</u>. The treatment of items as partnership items with respect to a partner named as a debtor in a bankruptcy proceeding will interfere with the effective and efficient enforcement of the internal revenue laws. Accordingly, partnership items of such a partner arising in any partnership taxable year ending on or before the last day of the latest taxable year of the partner with respect to which the United States could file a claim for income tax due in the bankruptcy proceeding shall be treated as nonpartnership items as of the date the petition naming the partner as debtor is filed in bankruptcy.

The regulation was adopted under section 6231(c), giving the IRS the authority to determine that certain items that would otherwise be treated as partnership items may be treated as nonpartnership items. See <u>Computer Programs Lambda, Ltd. v. Commissioner</u>, 89 T.C. 198, 204 (1987); <u>Fein v. Commissioner</u>, T.C.

Memo. 1994-370. Relying on these authorities, respondent argues that any partnership items of either petitioner or Arivada with regard to HOMC for 1996 and 1997 were converted as of the time the bankruptcy petitions were filed in 1998 to nonpartnership items subject to the deficiency procedures used in this case. We agree with respondent.

Petitioner has cited neither reason nor authority for his proposition that filing of the bankruptcy petitions should be disregarded because Arivada's bankruptcy case was dismissed before the notice of deficiency was sent. He achieved a stay in his earlier case that was lifted by the bankruptcy court so that the Tax Court case could be resolved. His case was dismissed after the notice of deficiency was sent to him. We agree with respondent that petitioner's argument lacks merit and that the notice of deficiency properly included what otherwise might have been regarded as partnership items. Thus, the Court has jurisdiction over those items in this case.

The parties prepared a stipulation as required by Rule 91 and by the Standing Pre-Trial Order served with the notice of trial. In the stipulation, petitioner objected on Fifth Amendment grounds to facts set forth in the stipulation that were not reasonably subject to dispute. Many of the documents attached to the stipulation were third-party documents, such as bank records. Petitioner claims that the Court was required to

conduct an in camera investigation before rejecting his Fifth Amendment claim. Petitioner declined to testify at trial, and the Court did not order him to testify. Because this is neither a criminal proceeding nor a contempt proceeding and no direct sanction was imposed against petitioner as a result of his refusal to testify, the cases on which he relies are not in point. See, e.g., United States v. Drollinger, 80 F.3d 389, 392 (9th Cir. 1996); United States v. Bodwell, 66 F.3d 1000, 1001 (9th Cir. 1995); United States v. Neff, 615 F.2d 1235, 1240 (9th Cir. 1980); United States v. Pierce, 561 F.2d 735, 741 (9th Cir. 1977).

The documentary and testimonial evidence presented by respondent satisfied respondent's burden to connect petitioner to the income determined in the statutory notice. See Johnston v. Commissioner, T.C. Memo. 2000-315 (and cases cited therein). He did not present credible evidence that would affect the burden of proof under section 7491(a). In addition, the evidence presented by respondent satisfied respondent's burden of production with respect to the penalties. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-449 (2001). The burden is on petitioner to prove that respondent's determinations are erroneous. He cannot avoid that burden by claiming the Fifth Amendment privilege and attempting to convert "the shield * * * which it was intended to be into a sword". United States v.

Rylander, 460 U.S. 752, 758 (1983); see Steinbrecher v. Commissioner, 712 F.2d 195, 198 (5th Cir. 1983), affg. T.C. Memo. 1983-12; McCoy v. Commissioner, 696 F.2d 1234 (9th Cir. 1983), affg. 76 T.C. 1027 (1981); Edwards v. Commissioner, 680 F.2d 1268 (9th Cir. 1982), affg. an unreported decision of this Court; United States v. Carlson, 617 F.2d 518, 523 (9th Cir. 1980). In the terms of the U.S. Supreme Court, a taxpayer may not "draw a conjurer's circle around the whole matter" of his tax liability. United States v. Sullivan, 274 U.S. 259, 264 (1927). The Court need not rule on petitioner's claim in the context of this case, although it may have been perceived as frivolous. See Johnson v. Commissioner, 289 F.3d 452 (7th Cir. 2002), affg. 116 T.C. 111 (2001) (assertion of Fifth Amendment privilege, inconsistent with a taxpayer's need to satisfy his burden of proof, might lead to sanctions).

The purpose of petitioner's various arguments is apparently to delay further or defeat satisfaction of his income tax liabilities. His demand for an in camera inspection was a dilatory tactic. He certainly did not want the trial judge to hear his theory about how evidence might have been used against him in a subsequent criminal proceeding. Presumably, he would have sought a continuance so that a different judge would conduct the trial in this case. In any event, he sought continuance of the case and removal of the trial judge on spurious grounds. See

<u>Ruocco v. Commissioner</u>, T.C. Memo. 2002-91.  He was warned at the calendar call and he had been warned by prior cases, including his own, concerning his misguided arguments and that he could expect to have a penalty under section 6673 awarded against him.

In his answers to interrogatories in this case, petitioner asserted that documents and information needed to respond to specific questions were in the hands of Chisum and John P. Wilde (Wilde).  (He also stated that Eileen Lipari was responsible for the preparation of HOMC's 1997 Federal income tax return.  See <u>Lipari v. Commissioner</u>, T.C. Memo. 2000-280.)  In his prior case and during the years in issue, petitioner claims to have relied on Chisum.  Chisum and Wilde are well known to the Court for the multiple cases in which they have appeared in one form or another, and they have been notably unsuccessful.  See, e.g., <u>Johnston v. Commissioner</u>, <u>supra</u>; <u>Quantum Invs., L.L.C. v. Commissioner</u>, T.C. Memo. 2000-247 (n.5); <u>Renaissance Enters. Trust v. Commissioner</u>, T.C. Memo. 2000-226; <u>Banana Moon Trust v. Commissioner</u>, T.C. Memo. 2000-73; <u>Jeff Burger Prods., LLC v. Commissioner</u>, T.C. Memo. 2000-72; <u>Bantam Domestic Trust v. Commissioner</u>, T.C. Memo. 2000-63.  The Court's records indicate approximately 30 cases in which petitions were filed by Wilde as either an alleged trustee or as the alleged tax matters partner of an LLC and were ultimately dismissed by reason of Wilde's failure to show his authority to proceed or for other failures.

Petitioner's filings in this case, including the briefs, bear all of the earmarks of style and content of documents filed by Wilde.

Petitioner is one of a group of people who pursue groundless arguments solely for the purpose of delay. By their procedural gimmicks, petitioner and his advisers seek to create a circular dilemma for respondent. They institute TEFRA proceedings that are duly dismissed, and then they assert the absence of a TEFRA proceeding in an attempt to block the individual deficiency case. The inevitable conclusion is that the proceedings are maintained for delay. Petitioner and those with whom he is associated obviously intend to clutter the Court's docket with nonmeritorious cases so that the scheduling of trials and resolution of cases will be impeded. Such conditions were among those that led Congress in 1989 to increase the amount of the penalty under section 6673 from $5,000 to $25,000. See H. Rept. 101-247 (1989) to accompany the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106, 2400-2401. Penalties have been awarded in comparable cases. See Ward v. Commissioner, T.C. Memo. 2002-147; Ruocco v. Commissioner, supra; Lipari v. Commissioner, supra. In this case, we conclude that a penalty under section 6673 is appropriate in the amount of $20,000.

To reflect the effect of respondent's concessions,

Decision will be entered

under Rule 155.