# United States Tax Court

T.C. Memo. 2023-111

LAKEPOINT LAND II, LLC, LAKEPOINT LAND GROUP, LLC,
TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket No. 13925-17.                          Filed August 29, 2023.

_____

*Jeffrey S. Luechtefeld*, *Michael Todd Welty*, *Roland Barral*, *Samuel H. Grier*, *Victor M. Fox*, *Armando Gomez*, *Cassandra S. Bradford*, *Hale E. Sheppard*, *Gabriella K. Cole*, *John J. Nail*, *Frederick Thaler Goldberg, Jr.*, *Belinda Be*, and *Sean R. Gannon*, for petitioner.

*Shannon E. Craft*, *William G. Bissell*, *Erin Kathleen Salel*, *Veronica L. Richards*, *Candace M. Williams*, *Carol Bingham McClure*, *Elizabeth P. Flores*, *Kevin A. Baker*, *Jenna N. E. Scott*, *Elizabeth C. Turnbull*, *Shahzaib Jiwani*, *Laura L. Gavioli*, and *Vivian Bodey*, for respondent.

## MEMORANDUM OPINION

WEILER, *Judge*: Before the Court are petitioner's (1) Motion for Reconsideration of this Court's Order served on March 24, 2023, granting respondent's Motion for Partial Summary Judgment and (2) Motion to Impose Sanctions. Also before the Court is respondent's Motion for Reconsideration of this Court's Order served on March 24, 2023. For the reasons set forth below, we will grant petitioner's Motion for Reconsideration and grant, in part, petitioner's Motion to Impose Sanctions and deny respondent's Motion for Reconsideration. Consistent with this Opinion, we will also vacate our Order served on March 24, 2023.

**Served 08/29/23**

[*2]                          *Background*

The following facts are derived from the pleadings, the parties' Motion papers, and the Exhibits and Declarations attached thereto. They are stated solely for purposes of deciding the above-referenced Motions and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

LakePoint Land II, LLC (LakePoint), is a limited liability company (LLC) treated as a partnership under the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71, for federal income tax purposes; petitioner, LakePoint Land Group, LLC, is its tax matters partner.[1] LakePoint had its principal place of business in Georgia when the Petition was timely filed. Absent stipulation to the contrary, appeal of this case would lie to the U.S. Court of Appeals for the Eleventh Circuit. *See* I.R.C. § 7482(b)(1)(E).[2]

The Internal Revenue Service (IRS) assigned Revenue Agent (RA) Pamela Stafford to examine LakePoint's Forms 1065, U.S. Return of Partnership Income, for the tax periods ending November 15 and December 31, 2013, and December 31, 2014. RA Catherine C. Brooks was the immediate supervisor of RA Stafford in connection with the examination.

Between May 9 and 20, 2016, RA Stafford corresponded with a representative of LakePoint. The objective of the correspondence between the two parties was to review proposed adjustments and penalties and to potentially reach a resolution of the audit. In the correspondence, LakePoint's representative requested that RA Stafford provide respondent's "determination" of penalties. RA Stafford responded by providing a list of "proposed adjustments," including penalties, to LakePoint's representative. The record does not indicate that a settlement was ever reached.

On July 15, 2016, RA Stafford prepared a penalty consideration lead sheet (July Lead Sheet). Initially, in respondent's Motion for Partial

---

[1] Before its repeal, TEFRA governed the tax treatment and audit procedures for many partnerships, including LakePoint.

[2] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*3]** Summary Judgment, we were led to believe that RA Brooks personally approved RA Stafford's initial determination of the penalties in writing by electronically signing the July Lead Sheet on July 16, 2016, and that this July Lead Sheet asserted all of the penalties that were eventually determined in LakePoint's final partnership administrative adjustment (FPAA). However, we have since learned from the parties that there exist different versions of this July Lead Sheet, including a version signed by RA Brooks on November 29, 2016 (November Lead Sheet). A Form 5701, Notice of Proposed Adjustment (NOPA), was also signed by RA Brooks on July 21, 2016. The parties now agree that the July Lead Sheet was amended by RA Stafford in February 2017 to include additional penalties (which were recommended by IRS Counsel) and was in fact signed by RA Brooks on February 10, 2017—although RA Brooks backdated her signature by writing in a date of July 16, 2016.

On March 27, 2017, respondent issued the FPAA to LakePoint. The FPAA determined for the 2013 tax year a section 6662(a) underpayment penalty based on the following:

(1) negligence or disregard of rules or regulations under section 6662(b)(1);
(2) a substantial understatement of income tax under section 6662(b)(2);
(3) a substantial valuation misstatement under section 6662(b)(3); and
(4) an increase to the section 6662(a) penalty from 20% to 40% for a gross valuation misstatement under section 6662(h).

The FPAA determined for the 2014 tax year a section 6662(a) underpayment penalty based on the following:

(1) negligence or disregard of rules or regulations under section 6662(b)(1); and
(2) a substantial understatement of income tax under section 6662(b)(2).

Petitioner timely filed a Petition with this Court on June 22, 2017, disputing the FPAA and seeking readjustments of partnership items under section 6226.

On August 11, 2022, respondent filed a Motion for Partial Summary Judgment seeking favorable adjudication on the issue of whether he complied with the written supervisory approval requirement of section 6751(b)(1) for the penalties asserted under section 6662(a),

**[\*4]** (b)(1), (2), and (3), and (h). On December 19, 2022, respondent filed a First Supplement to Motion for Partial Summary Judgment in which he argued that "complaints petitioner asserts with respect to the Penalty Consideration Lead Sheets signed on July 16 and November 29, 2016, are absent from the penalty-approval NOPA." In respondent's supplemental filing, there is no indication to the Court that the July Lead Sheet was in fact signed by RA Brooks on February 10, 2017. Rather, respondent's counsel continued to represent to the Court that RA Brooks had in fact signed the document in question on July 16, 2016.

On January 27, 2023, petitioner filed its Opposition to Motion for Partial Summary Judgment. By Order served on March 24, 2023, we granted respondent's Motion for Partial Summary Judgment. The parties both now seek reconsideration of our Order.

*Discussion*

I.     *Legal Background*

Section 6751(b)(1) provides that "[n]o penalty . . . shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." An "immediate supervisor" is the person who supervises the agent's substantive work on examination. *See Sand Inv. Co. v. Commissioner*, 157 T.C. 136, 142 (2021). We have previously ruled that an "initial determination" signifies a "consequential moment" of IRS action. *See Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 15 (2020) (quoting *Chai v. Commissioner*, 851 F.3d 190, 221 (2d Cir. 2017), *aff'g in part, rev'g in part* T.C. Memo. 2015-42).

In *Kroner v. Commissioner*, 48 F.4th 1272, 1276 (11th Cir. 2022), *rev'g in part* T.C. Memo. 2020-73, the Eleventh Circuit held that "the IRS satisfies [s]ection 6751(b) so long as a supervisor approves an initial determination of a penalty assessment before [the IRS] assesses those penalties." The court interpreted the phrase "initial determination of [the] assessment" to refer to the "ministerial" process by which the IRS formally records the tax debt. *See id.* at 1278. Communications about proposed penalties cannot be equated to an "initial determination of such assessment." *Id.* at 1277.

Furthermore, section 6751(b)(1) does not require approval to be indicated by a wet signature, nor any particular form of signature; rather, respondent need only show written evidence that timely supervisory approval was obtained. *See Chadwick v. Commissioner*, 154

**[\*5]** T.C. 84, 94 (2020) (citing *Blackburn v. Commissioner*, 150 T.C. 218, 223 (2018)); *Belair Woods*, 154 T.C. at 16 (holding that the statute "mandates only that the approval of the penalty assessment be 'in writing' and by a manager" (quoting *PBBM-Rose Hill, Ltd. v. Commissioner*, 900 F.3d 193, 213 (5th Cir. 2018))); *Palmolive Bldg. Invs., LLC v. Commissioner*, 152 T.C. 75, 86 (2019).

Rule 201(a) provides that practitioners before the Court shall carry on their practice in accordance with the American Bar Association (ABA) Model Rules of Professional Conduct (Model Rules). ABA Model Rule 3.3, Candor Toward the Tribunal, provides that a lawyer shall not knowingly make a false statement of fact to a tribunal or fail to correct a false statement of material fact previously made to the tribunal.

The Court has the power to assess attorney's fees against counsel who willfully abuse the judicial process. *See Dixon v. Commissioner*, 132 T.C. 55, 68 (2009). These powers are derived from various sources, including the Internal Revenue Code, our Rules,[3] the Federal Rules of Civil Procedure, and the Court's inherent power. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980); *Harper v. Commissioner*, 99 T.C. 533, 543–44 (1992).[4]

"When an attorney representing the Commissioner has committed a fraud on the Court, the Court has power to assess attorneys' fees against the Commissioner as a sanction pursuant to section 6673(a)(2)(B) or under the Court's inherent power." *Dixon*, 132 T.C. at 68. If the attorney is appearing on behalf of the Commissioner, the Court may require the United States to "pay such excess costs, expenses, and attorneys' fees in the same manner as such an award by a district court." I.R.C. § 6673(a)(2)(B).

---

[3] Although not applicable here, Rule 121(i) provides that the Court may, when affidavits or declarations filed under this Rule are presented in bad faith or solely for delay, award reasonable expenses which the other party was caused to incur, including reasonable attorney's fees.

[4] We noted in *Dixon*, 132 T.C. at 103, that "[a] primary aspect of the Court's discretion to invoke its inherent power is the ability to fashion an appropriate sanction for conduct that abuses the judicial process." The Court's inherent powers may be invoked irrespective of whether "existing statutes or procedural rules sanction the same conduct." *Id.*

**[\*6] II.** *Summary of Parties' Arguments*

    A. *Petitioner's Arguments*

Petitioner contends that reconsideration of the Court's Order served on March 24, 2023, granting respondent's Motion for Partial Summary Judgment is appropriate. First, petitioner argues that the Court relied on respondent's false Declaration and backdated document. Second, petitioner contends that respondent's reliance on the July 21, 2016, NOPA as a valid section 6751(b) approval is misplaced and that he never disclaimed the July Lead Sheet, which this Court relied upon. Third, petitioner contends that the November Lead Sheet is likely also invalid and does not approve the substantial valuation or gross misstatement penalties.

With respect to its Motion to Impose Sanctions, petitioner contends, on the basis of false evidence presented and respondent's counsel's conduct, that sanctions against respondent under section 6673(a)(2), this Court's Rules, and the powers inherent to it are warranted here.

    B. *Respondent's Arguments*

Respondent also seeks reconsideration of this Court's Order served on March 24, 2023. Respondent acknowledges that RA Brooks did not execute the July 2016 Lead Sheet until February 10, 2017; however, respondent argues this approval was made timely under the requirements of section 6751(b) on the basis of controlling law of the Eleventh Circuit. Accordingly, respondent now contends he remains entitled to partial summary adjudication with respect to his compliance with section 6751(b).

In response to petitioner's Motion to Impose Sanctions, respondent acknowledges how his actions—and those of his counsel—fall short, but he contends that these actions do not rise to the level of fraud or bad faith and therefore do not warrant the imposition of any sanctions. Respondent argues that his counsel has complied with ABA Model Rule 3.3(a)(1) and (3) and with Rule 201 requiring candor to the Court. Next, respondent contends that prior to filing for partial summary judgment his counsel made a reasonable inquiry and properly determined that the relief sought was grounded in fact as required by Rules 33(a) and 50(a). Respondent goes on to contend that the first Declaration by RA Brooks was not submitted in bad faith or solely for delay and that respondent's actions do not warrant petitioner's

[*7] requested relief under Rule 123. Moreover, respondent contends that his actions—and those of his counsel—have not multiplied these proceedings and that his counsel have not otherwise acted recklessly or in bad faith making respondent subject to sanctions under section 6673(a)(2) or the powers inherent to this Court.

III.    *Analysis*

A.    *The Parties' Motions for Reconsideration*

Both petitioner and respondent have filed Motions for Reconsideration of this Court's March 24, 2023, Order, granting respondent's Motion for Partial Summary Judgment. In our Order we stated in part:

> RA Stafford's communication with LakePoint's representative between May 9, 2016, and May 20, 2016, concerned proposed penalties and the possibility of resolutions prior to letting this matter go before the Court. We find these communications to be informal discussions regarding potential applicable penalties and not an "initial determination." *See Kroner*, 48 F. 4th at 1277. Instead, the July Lead Sheet indicates that RA Stafford made the initial determination of penalties on July 15, 2016. All of the penalties at issue in this case were then approved by RA Brooks on July 16, 2016. Respondent supplied a Declaration confirming that RA Brooks was RA Stafford's immediate supervisor as part of his Motion for Partial Summary Judgment. Respondent supplied a copy of the July Lead Sheet, which was digitally signed by RA Brooks, as RA Stafford's manager. The subsequent actions of RA Brooks[] on July 18, 2016, are inconsequential.

Respondent's arguments on reconsideration, with respect to his Motion for Partial Summary Judgment, are different from those initially proffered in his Motion for Partial Summary Judgment. Originally, and on the basis of RA Brooks's Declaration dated August 9, 2022, respondent contended that RA Brooks personally approved, in writing, RA Stafford's initial determination of penalties by "signing the Penalty Consideration Lead Sheet on July 16, 2016." Respondent, in the alternative in a supplemental filing, argued that RA Brooks's signature on the July 21, 2016, NOPA satisfied section 6751(b)(1) for all penalties

**[\*8]** at issue in the case.[5] However, notwithstanding this secondary argument, in this supplemental filing made on December 19, 2022, respondent continued to represent to the Court that RA Brooks had executed the July Lead Sheet on July 16, 2016. We agreed with respondent's initial argument and granted partial summary judgment on the issue of his compliance with section 6751(b)(1) in our March 24, 2023, Order.[6]

However, it is now apparent that our ruling was predicated on facts that were not true. Accordingly, we will grant reconsideration and vacate our Order, which is based on erroneous facts.

1. *Whether Respondent's Motion Meets the Standard for Reconsideration*

Reconsideration under Rule 161 is intended to correct substantial error, either of fact or law, and facilitates the introduction of new evidence the moving party could not have previously introduced with due diligence. *See, e.g.*, *Estate of Quick v. Commissioner*, 110 T.C. 440, 441 (1998), *supplementing* 110 T.C. 172 (1998). However, reconsideration is not the appropriate forum for rehashing previously rejected legal arguments or for tendering new legal theories to reach the end result desired by the moving party. *See id.* at 441–42. Deciding whether to grant a motion for reconsideration lies within the discretion of the Court. *See CWT Farms, Inc. v. Commissioner*, 79 T.C. 1054, 1057 (1982), *aff'd*, 755 F.2d 790 (11th Cir. 1985).

It is undisputed that respondent possessed all of the documents and records when he moved for partial summary judgment in August 2022. We conclude that respondent's Motion for Reconsideration is inappropriate here. Respondent's arguments in his Motion for

---

[5] Before our Order, respondent submitted a second Declaration by RA Brooks dated December 14, 2022. In the second Declaration RA Brooks stated that she approved RA Stafford's initial determination of penalties on July 21, 2016, by electronically signing the NOPA. The Court now understands the purpose of submitting a second Declaration by RA Brooks, namely, that respondent was presenting additional evidence in support of a new theory on when the initial determination occurred. However, in this supplemental filing respondent's counsel failed to notify the Court that RA Brooks's August 9, 2022, Declaration was factually erroneous.

[6] In its Motion for Reconsideration petitioner notes that we have previously ruled that RA Stafford's preparation of the July Lead Sheet was respondent's section 6751(b) initial determination.

**[\*9]** Reconsideration were previously considered by the Court in its March 24, 2023, Order, and he raised no new arguments meriting reconsideration. Accordingly, we will deny respondent's Motion for Reconsideration.

2.      *Whether Petitioner's Motion Meets the Standard for Reconsideration*

Unlike respondent's Motion for Reconsideration, we find petitioner's motion has established sufficient grounds for reconsideration. Namely, new evidence previously unavailable to petitioner refutes the factual representations respondent made in RA Brooks's August 9, 2022, Declaration. *See Estate of Quick*, 110 T.C. at 441. Accordingly, we will grant petitioner's Motion for Reconsideration.

3.      *Reconsideration of the Court's March 24, 2023, Order*

Respondent has now abandoned his argument that the initial determination and supervisory approval for all penalties at issue occurred on July 16, 2016. Rather, respondent now contends penalty approval occurred before the issuance of the FPAA in this case, when RA Brooks reviewed and edited Form 886–A, Explanation of Items, on July 12, 2016, signed the NOPA on July 21, 2016, and then approved the July Lead Sheet on November 29, 2016.[7] Petitioner disputes these arguments and contends that the NOPA is not a valid section 6751(b) penalty approval. Petitioner also contends that there remain underlying disputes of fact with respect to the July Lead Sheet; namely, when the document was signed—November 29, 2016, or February 10, 2017—and what penalties were listed on the versions of the document prepared by RA Stafford in July 2016 and February 2017.[8] We agree with petitioner's arguments.

Viewing the factual materials and the inferences drawn therefrom in the light most favorable to petitioner, we conclude that

---

[7] Since we will deny respondent's Motion for Reconsideration, it is inappropriate to reconsider respondent's arguments (as revised) in support of his Motion for Partial Summary Judgment.

[8] We acknowledge petitioner's arguments concerning (1) a second lead sheet signed on November 29, 2016, by RA Brooks which did not include a section 6662(b)(3) penalty for substantial valuation misstatement or section 6662(h) increased penalty for gross valuation misstatement, and (2) an email correspondence from RA Stafford and the TEFRA coordinator to RA Brooks concerning a missing signature on a lead sheet. These factual issues cannot be resolved by summary adjudication.

**[*10]** genuine disputes of material fact exist precluding a finding that respondent has complied with the requirements of section 6751(b)(1). Consequently, we will vacate our March 24, 2023, Order granting respondent's Motion for Partial Summary Judgment filed on August 11, 2022, as supplemented.

B.     *Petitioner's Motion to Impose Sanctions*

Petitioner seeks sanctions under section 6673(a)(2), this Court's Rules, and the Court's inherent authority to supervise its proceedings. In its Motion to Impose Sanctions and Memorandum in Support of Motion to Impose Sanctions, petitioner contends that sanctions are appropriate, since RA Brooks provided a false Declaration and attached the backdated July Lead Sheet to that Declaration. Petitioner also contends that respondent's counsel knew or should have known that RA Brooks submitted a false Declaration to this Court. Petitioner's Motion to Impose Sanctions further cites Rule 123(b) and requests that this Court decide the section 6751(b) penalty approval issue against respondent and award reasonable expenses including attorney's fees it incurred as a result of respondent's misconduct.

In response respondent has acknowledged his counsel's shortcomings and indicated that "he should have exercised more candor to the Court by explicitly identifying the issue with the date of the Penalty Lead Sheet referenced in the First Brooks Declaration." Respondent has also acknowledged that his First Supplement to Motion for Partial Summary Judgment "fall[s] short of the level of excellence and professionalism that the Court has a right to expect"; however, respondent contends his counsel's actions do not rise to the level of fraud or bad faith. Respondent contends that his counsel was unaware of the issues related to the July Lead Sheet when the original Motion for Partial Summary Judgment was filed. Respondent goes on to acknowledge his counsel's obligation under ABA Model Rule 3.3 of ongoing candor to this Court and contends that his counsel took remedial actions to correct this error.

Considering the foregoing, we find the actions taken by respondent, namely his November 7, 2022, Response to Petitioner's First Request for Admissions, and December 19, 2022, First Supplement to Motion for Partial Summary Judgment, fall short of respondent's obligation to this Court. It is undisputed that this Court was not made aware of the backdated July Lead Sheet and erroneous RA Brooks Declaration until April 10, 2023, which was some seven months after

**[*11]** the Motion for Partial Summary Judgment was filed, and some five months after respondent's counsel knew (or should have known) of the backdated signature.

The facts before us support a finding that respondent's counsel was less than forthcoming with this Court. The month before filing his First Supplement to Motion for Partial Summary Judgment on December 19, 2022, respondent also denied petitioner's Request for Admissions seeking to confirm that RA Brooks executed the July Lead Sheet on July 16, 2016. In his written response dated, November 7, 2022, respondent stated: "Admits Agent Brooks executed the [July] penalty lead sheet, denies for lack of sufficient information the exact date the lead sheet was executed." Then on March 3, 2023, respondent's counsel produced emails between RA Brooks and RA Stafford reflecting that RA Brooks signed the July Lead Sheet on February 10, 2017 (not July 16, 2016). At the same time, however, he continued to represent to this Court in the First Supplement to Motion for Partial Summary Judgment that RA Brooks signed the July Lead Sheet on July 16, 2016.

It was respondent's counsel who previously recommended in a February 2017 internal memorandum to RA Stafford that she include both the substantial valuation and gross valuation misstatement penalties. Even if respondent's counsel did not initially recall the sequence of penalty approvals in this case, at a minimum counsel for respondent had a duty to the Court to timely correct these erroneous factual representations in November 2022. RA Brooks informed respondent's counsel by email on November 2, 2022, that she had noticed a discrepancy between the July and November Lead Sheets and stated: "Based on the email and the differences in the lead sheet . . . I am not sure that the typed in date of 7/16/2016 on this version Word doc lead sheet was accurate for that document—it is important to note also that the file I located matching the p27 exhibit is dated 2/10/2017."

On the basis of the foregoing, we find respondent's counsel knew or should have known, no later than November 2, 2022, that his representations made to this Court were less than accurate and lacked candor and that RA Brooks's Declaration was false. Under ABA Model Rule 3.3, respondent's counsel has an ongoing obligation to correct these misrepresentations of fact but failed to do so. Rather than correcting this material misrepresentation found in respondent's Motion for Partial Summary Judgment, respondent's counsel sought to pivot and present additional evidence on an alternative legal theory without withdrawing or conceding the original legal theory for why summary adjudication was

**[\*12]** appropriate here. Furthermore, no other remedial action was taken with the Court to correct the error until April 10, 2023, which was after this Court had issued its Order granting respondent's Motion.

In sum we find respondent's counsel failed to timely advise the Court of RA Brooks's erroneous Declaration. Accordingly, we find the actions of respondent's counsel to be in bad faith and to have multiplied the proceedings in this case unreasonably and vexatiously. *See* I.R.C. § 6673(a)(2). In fact the actions of respondent's counsel have, among other things, resulted in petitioner's retaining additional counsel to elicit the truth regarding the section 6751(b) issues in this case and have substantially increased the discovery and motion practice required. However, the actions of these actors should not be attributed to respondent directly.[9]

Respondent acknowledges that this Court has previously awarded attorney's fees and expenses to a taxpayer under section 6673(a)(2)(B) on the basis of misconduct of the Commissioner's counsel; however, respondent here contends that his counsel's conduct does not rise to the level of misconduct found in *Dixon*, 132 T.C. at 68. We disagree. Both parties cite Eleventh Circuit cases for the proposition that bad faith turns on an attorney's objective conduct. *See Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007). We find that the objective actions of respondent's counsel rise to the level of bad faith. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1178 (11th Cir. 2005) ("[T]he proper standard in the Eleventh Circuit for an award of attorney's fees from opposing counsel is conduct tantamount to bad faith. In other words, in contradistinction to several of its sister circuits, the Eleventh Circuit does not require an express factual finding by the Court that Plaintiff's counsel acted in *deliberate* bad faith, merely that counsel's conduct sunk so far beneath a reasonable standard of competence, much deeper than mere negligence, that it became essentially indistinguishable from bad faith." (quoting *Cordoba v.*

---

[9] We also acknowledge the actions of newly appearing IRS Chief Counsel, their meeting with petitioner's representative in May 2023, and their subsequent efforts to provide clarity and correction to the erroneous factual representations made by original counsel.

**[\*13]** *Dillard's, Inc.*, No. 6:01-cv-1132ORL19KRS, 2003 WL 21499011, at \*7 (M.D. Fla. June 12, 2003))).[10]

Petitioner also seeks relief under Rule 123(b) by requesting an adverse ruling on respondent's compliance with the penalty approval requirement in section 6751(b). Respondent opposes this relief and contends that "there is no basis on which to impose sanctions, much less the extreme sanction of determining a major adjustment in the case adversely to respondent as punishment for what was at most an unintentional and unknowing violation of the duty of candor." We do not accept respondent's argument in full. While the actions of respondent's counsel may have begun as unintentional and unknowing—as detailed above—we find his counsel's actions lacked candor for some five months before counsel disclosed the issue to the Court. However, we do agree that granting an adverse ruling would be inappropriate here; therefore, we decline to grant the relief petitioner seeks under Rule 123(b).

On the other hand, a government attorney who unreasonably and vexatiously multiplies Tax Court proceedings brings down upon the United States, subjects the United States to, and makes the United States vulnerable to liability for the costs, expenses, and fees attributable to the services of the taxpayer's attorney's professional services that are required as an appropriate response to the misconduct. I.R.C. § 6673(a)(2). The United States incurs the attorney's fees by operation of law under section 6673(a)(2)(B), just as a taxpayer incurs a penalty for his own misconduct under section 6673(a)(2)(A). *See Dixon*, 132 T.C. at 86. The operative phrase of section 6673 to be interpreted is "excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The part of the phrase "excess costs, expenses, and attorneys' fees" means only the costs, expenses, and fees associated with the multiplied proceedings and not the total cost of the litigation.

Under section 6673(a)(2) we must determine what fees and expenses were incurred by petitioner's counsel because of respondent's counsel's unreasonable and vexatious misconduct. *See Harper*, 99 T.C. at 549 (describing computations under section 6673); *see also Huffman v. Saul Holdings Ltd. Pship.*, 262 F.3d 1128, 1135 (10th Cir. 2001)

---

[10] The text of 28 U.S.C. § 1927 is substantially the same as that of section 6673(a)(2), and the two statutes serve the same purposes in different forums. *See Johnson v. Commissioner*, 289 F.3d 452 (7th Cir. 2002), *aff'g* 116 T.C. 111 (2001).

**[\*14]** (discussing fees awarded under 28 U.S.C. § 1447(c)).[11] On the basis of the record before us, we find it is premature to award costs and fees to petitioner since no evidence of the excess costs and fees incurred has been submitted; rather, we find it is appropriate for us to make such a determination in the future.

We will grant, in part, petitioner's Motion to Impose Sanctions under section 6673(a)(2),[12] and we will reserve ruling on respondent's liability for excess costs until after trial. We will otherwise deny the relief sought in petitioner's Motion to Impose Sanctions.

To reflect the foregoing,

*An appropriate order will be issued.*

---

[11] In computing attorney's fees sanctions under 28 U.S.C. § 1927, the generic sanctioning statute, federal district courts apply the lodestar method without regard to the client's obligation to pay the attorney at the billed rate; and whether the client has in fact paid his attorneys at the rate billed is irrelevant to the issue of the amount of the sanction. *Dixon*, 132 T.C. at 84–85.

[12] We need not address whether to grant petitioner's Motion to Impose Sanctions under the powers inherent to this Court since the conduct of respondent's counsel is adequately addressed and sanctioned by section 6673(a)(2).